DONALD K. WIEGAND *v.* CORINNE M. WIEGAND
(AC 31773)

Lavine, Bear and West, Js.

---

Argued April 18—officially released June 21, 2011

tence . . . report of which he or she is aware or which the defendant claims to exist."

*Donald K. Wiegand,* pro se, the appellant (plaintiff).

*Opinion*

BEAR, J. The plaintiff, Donald K. Wiegand, appeals from the judgment of the trial court dissolving his marriage to the defendant, Corinne M. Wiegand, and entering certain financial and property distribution orders.[1] On appeal, the plaintiff claims that the court improperly (1) failed to give him the protection afforded him by Practice Book § 25-5 (a) (1), (2) demonstrated prejudice against him, (3) failed to award him alimony, thus leaving him destitute, and (4) entered financial and property distribution orders that were one-sided, the language of which would cause further disputes. We reverse in part and affirm in part the judgment of the trial court.

The plaintiff and the defendant were intermarried on April 1, 1989. There were no children born of the marriage. On January 16, 2009, the plaintiff, acting pro se, filed a complaint seeking dissolution of the parties' marriage. On January 27, 2009, the defendant, also acting pro se, filed her answer. The plaintiff, the defendant and one additional witness, David Stegmeir, testified

---

[1] The defendant did not file a brief in this court or otherwise participate in this appeal. Consequently, after giving the defendant notice and the opportunity to file her brief, we considered the case on the record, the plaintiff's brief and his oral argument only.

during the trial, wherein the court extensively questioned the parties and Stegmeir. After the trial, the court, finding that the marriage had broken down irretrievably, granted the dissolution and entered financial and property distribution orders. It did not award alimony to either party. This appeal followed. Additional facts will be set forth as necessary.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record or as a whole. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 227–28, 987 A.2d 362 (2010). "A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties

are so significant." (Internal quotation marks omitted.) *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 460, 995 A.2d 117 (2010).

I

The plaintiff first claims that the court failed to give him the protection afforded him by Practice Book § 25-5 (a) (1).[2] He argues that the defendant and her live-in friend, Stegmeir, violated the automatic orders of the court and disposed of many items of the plaintiff's personal property that had remained in the marital home, and the court improperly denied the plaintiff a full opportunity to question them about the disposal of these items. We are not persuaded.

The following additional facts are relevant to our analysis. The defendant, who has a heart condition, testified that throughout the years the plaintiff had been unwilling to unpack when they moved and that he had left boxes outside, on the patio, in the living room, the den and the sun room. She stated that it was difficult to cope with living out of boxes and that she had tried to explain that to the plaintiff, but he was not responsive; rather, he spent his time playing on the computer. The

---

[2] Practice Book § 25-5 provides in relevant part: "(a) The following automatic orders shall apply to both parties, with service of the automatic orders to be made with service of process of a complaint for dissolution of marriage or civil union, legal separation, or annulment, or of an application for custody or visitation. An automatic order shall not apply if there is a prior, contradictory order of a judicial authority. The automatic orders shall be effective with regard to the plaintiff or the applicant upon the signing of the complaint or the application and with regard to the defendant or the respondent upon service and shall remain in place during the pendency of the action, unless terminated, modified, or amended by further order of a judicial authority upon motion of either of the parties:

"(1) Neither party shall sell, transfer, encumber (except for the filing of a lis pendens), conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of a judicial authority, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney's fees in connection with this action. . . ."

plaintiff admitted that many boxes were never unpacked, but he alleged that this was because he wanted the defendant to go through the contents of each box with him but that she was unwilling.

Stegmeir, a friend, whom the defendant met via an Internet chat room, testified that he first met the defendant in person when he went to the parties' home in mid-November, 2008, "because [he had] heard over the telephone the plaintiff threatening [the defendant] and basically threatening to kill himself and her and her dog . . . ." Stegmeir further testified that upon arriving at the parties' home, "[t]he outside of the house was completely stacked with boxes and debris. The inside of the house you could barely walk into. The living room was stacked from floor to ceiling, front to back, with numerous boxes and containers. Basically, every room in the house was that way. So, I volunteered to help them put the stuff away, but it was full of mold, mildew, water, bugs. It was just a horrible mess." Stegmeir also stated that it took him approximately six months to sort through the items and to separate the plaintiff's belongings from the defendant's belongings. Many of the items, however, were covered in mold and mildew, creating a health hazard, which Stegmeir stated he had to pay a junk man to remove. Stegmeir also stated that he and the defendant are roommates but that they are not romantically involved in any way.

The plaintiff cross-examined Stegmeir, asking him if he was aware that disposing of these belongings was a violation of the automatic orders set forth in Practice Book § 25-5 (a) (1). The court interrupted the plaintiff's line of questioning, explaining that Stegmeir was not a party to the litigation. The plaintiff responded that by removing the belongings, Stegmeir had become a party. The court reiterated that Stegmeir was not a party and told the plaintiff to move on.

The record does not reveal that the plaintiff filed a motion for contempt for the defendant's alleged violation of Practice Book § 25-5 (a) (1). The record also does not reveal any facts found by the court regarding the disposal of these belongings, nor does the record contain any indication as to the contents of the boxes.[3] It seems apparent, however, that the court credited the testimony of Stegmeir that the belongings were moldy and in need of disposal. See generally *Rubenstein* v. *Rubenstein*, 107 Conn. App. 488, 497, 945 A.2d 1043 ("It is the sole province of the trial court to weigh and interpret the evidence before it and to pass on the credibility of the witnesses. . . . It has the advantage of viewing and assessing the demeanor, attitude and credibility of the witnesses and is therefore better equipped than we to assess the circumstances surrounding the dissolution action." [Citation omitted; emphasis omitted; internal quotation marks omitted.]), cert. denied, 289 Conn. 948, 960 A.2d 1037 (2008). Furthermore, although the plaintiff filed a motion for articulation asking the court to articulate ten different matters, none of the matters related to the disposal of his belongings.

The plaintiff has pointed to nothing in the record that would convince us that the court acted improperly in directing him to move on with his questioning of Stegmeir, who was not a party to the litigation, regarding his possible violation of the automatic orders in Practice Book § 25-5 (a) (1) by the disposal of these belongings. On the basis of the record before us, we conclude that the court handled the matter properly.

II

Although he did not raise the issue at trial, the plaintiff claims on appeal that the court demonstrated prejudice

---

[3] On appeal, the plaintiff argues that the items in the boxes "are believed to have been [mostly] the plaintiff's personal property . . . ."

against him during the hearing. He argues that the court treated him in a hostile and unethical manner, while always treating the defendant politely. The plaintiff especially is concerned about the court's alleged disinterest in the defendant's cancellation of the plaintiff's AOL Internet account and his efforts to explain the restraining order that had been issued against him. The plaintiff provides no citations to or analysis of case law to support a claim of judicial bias; see *Watkins* v. *Thomas*, 118 Conn. App. 452, 455–56, 984 A.2d 106 (2009); nor did he preserve his claim of judicial bias in accordance with Practice Book § 1-23.[4] Furthermore, the plaintiff has not requested that we review his claim under the plain error doctrine. Nevertheless, because claims of judicial bias strike at the very core of judicial integrity and implicate the basic concepts of a fair trial, we will review the plaintiff's claim.

"Accusations of judicial bias . . . implicate the basic concepts of a fair trial. . . . The appearance as well as the actuality of [partiality] on the part of the trier will suffice to constitute proof of bias sufficient to warrant disqualification." (Internal quotation marks omitted.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 834, 949 A.2d 557 (2008). Canon 3 (c) (1) of the Code of Judicial Conduct (2009), which was in effect when this case was tried,[5] provides in relevant part: "A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned,

---

[4] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

[5] Although canon 3 (c) (1) was the applicable canon in effect in 2009, the Code of Judicial Conduct was rewritten in 2011. The corresponding section on judicial bias now appears as rule 2.11 to canon 2 of the Code of Judicial Conduct.

including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party . . . ." To prevail on his claim of a violation of this canon, the plaintiff need not show actual bias. The plaintiff has met his burden if he can prove that the conduct in question gave rise to a reasonable appearance of impropriety. See *Watrous* v. *Watrous*, supra, 834.

"A trial judge, as a minister of justice, should be both cautious and circumspect in his language and conduct and should conduct a trial with the highest degree of impartiality. . . . A judge . . . should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. . . . The trial judge should be the exemplar of dignity and impartiality. . . . The trial court is responsible for maintaining a calm demeanor and the decorum of the courtroom." (Citations omitted; internal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 11, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989).

The plaintiff points to several instances where the court interrupted the plaintiff's testimony and redirected him, including when the plaintiff attempted to explain that he was upset by the defendant's cancellation of the AOL account, which he states may have cost him a job, and his attempt to explain the circumstances surrounding the restraining order to which he was subject. Although we understand the plaintiff's desire to tell his side of the story and to air fully his differences with the defendant, a review of the record reveals that the court was attempting to keep both parties focused on evidence relevant to the issues in the case instead of unhelpful accusations, blame or the relaying of other irrelevant material. It is the court's responsibility to take those steps necessary to ensure the orderly progress of the hearing. See *LaBow* v. *LaBow*, 13 Conn. App. 330,

334, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

We are mindful that the court, at times, demonstrated some frustration and impatience with the plaintiff; however, we conclude that its statements were impartial and were meant to keep the plaintiff focused on relevant evidence that properly could be considered by the court. See generally id. The court also redirected the defendant on several occasions. The transcript of the hearing does not reveal any apparent bias against the plaintiff or in favor of the defendant. Although the court may have interrupted the plaintiff's testimony or questioning, it is apparent that the court was attempting to keep the testimony relevant and focused. "[I]t is often repeated in our case law that a trial court has wide discretion to determine whether to admit evidence." *Travelers Property & Casualty Co.* v. *Christie*, 99 Conn. App. 747, 758, 916 A.2d 114 (2007).

Our thorough review of the record does not reveal anything that leads us to question the judge's impartiality in this case. Clearly, a finding of plain error is not warranted.

### III

The plaintiff next claims that the court improperly failed to award him alimony, thus leaving him destitute. He argues that he is unemployed, yet, the court failed to award him alimony while allocating to him 72 percent of the marital debt. We agree that the court abused its discretion in failing to award some type of alimony to the plaintiff.

"We begin our analysis by noting that . . . the purpose of alimony [is] the obligation of support that spouses assume toward each other by virtue of the marriage. . . . This court has stated that [a]limony is

always represented by money and is damages to compensate for loss of marital support and maintenance. . . . In other words, alimony represents the court's finding, measured in dollars, of the financial needs of the receiving spouse at the time of the dissolution." (Internal quotation marks omitted.) *Lehan* v. *Lehan*, 118 Conn. App. 685, 696, 985 A.2d 378 (2010).

"[General Statutes §] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . . In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 271, 7 A.3d 924 (2010).

As this court explained in *Kovalsick*: "[W]e recognize that it is generally uncommon for a reviewing court to determine that the trial court has abused its broad discretion in deciding whether to award alimony and otherwise craft financial orders in a dissolution decree. Reluctance to reverse the trial court's exercise of discretion, however, should not mean that the door is entirely closed to successful appeals in dissolution cases. . . . *Gervais* v. *Gervais*, 91 Conn. App. 840, 846, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005). Our appellate courts have reversed excessive or inequitable financial orders. See *Greco* v. *Greco*, 275 Conn. 348, 356–60, 880 A.2d 872 (2005) (reversing financial orders when 98.5 percent of marital property and substantial alimony awarded to one spouse); *Pellow* v. *Pellow*, 113 Conn. App. 122, 129, 964 A.2d 1252 (2009) (reversing financial orders when orders consumed 90 percent of

paying spouse's income)." (Internal quotation marks omitted.) *Kovalsick* v. *Kovalsick*, supra, 125 Conn. App. 272.

In *Kovalsick*, the trial court had found that the parties were equally educated and that the plaintiff was bilingual, thus giving her an advantage in the job market. Id., 274. The trial court, despite the actual earning disparity between the parties, declined to award time limited alimony to the plaintiff. Id. The court had found that the plaintiff, throughout the marriage, had earned only $13 to $15 per hour, while the defendant historically had earned approximately five times that amount. Id., 267. On appeal, this court found that there had been no evidence presented to demonstrate that the plaintiff was capable of earning more than she historically had earned without further education and training. Id., 274. We also noted that the evidence showed that the plaintiff "was not able to meet her obligations, which included the payments on the [marital] debt." Id., 274–75. After considering the record, we concluded that "[i]t [was] reasonably foreseeable that, if the court's financial orders [were] allowed to stand and the plaintiff continue[d] to be responsible for the entire debt but [was] unable either to increase her earning capacity or to receive alimony or a portion of the marital property, she could well be in dire financial straits." Id., 275.

We held in *Kovalsick* that the goal of fairness was not served by the outright refusal to order alimony under the facts presented in that case. Id. In that case, we were guided by our decision in *Greco* v. *Greco*, supra, 275 Conn. 363, which held that: "Under the trial court's order, the defendant was forced to the brink of abject poverty by his obligations to pay the required alimony and insurance premiums, and then stripped of any means with which to pay them by the disproportionate division of the marital assets. Such an order constitutes an abuse of discretion in light of the defendant's age,

poor health and compromised ability to work." Likewise, we conclude in the present case, on the basis of the record before us, that the goal of fairness required the court to award to the plaintiff some form of alimony.

Here, the court found that at the time of trial the plaintiff was fifty-five years old, and the defendant was fifty-one. The parties had been married for approximately twenty years. The plaintiff was employed as a computer operator when the parties married, and he continued to be employed until May, 2007. Thereafter, the plaintiff collected unemployment benefits for the maximum period permitted. He attempted to find work through Manpower, but, despite his weekly telephone calls, he received no assignments and remained unemployed. The department of labor no longer listed computer operator as a job. The plaintiff also served on inactive reserve duty in the Connecticut Army National Guard. He has no health insurance. Further, as to the defendant, the court found that she was employed as a collections specialist, and, at the time of the dissolution, she was earning $1160 in gross weekly salary, netting approximately $889. She had no medical benefits and was considered a contract employee. The court found neither the plaintiff's nor the defendant's financial affidavits credible. The court made no findings concerning the education level of either party, nor did it make any findings concerning the earning capacity of either party, nor was any testimony elicited to assist the court in making these findings.[6] Although the court found that

___

[6] When rendering judgment in a dissolution case, before making property distributions and financial orders, the court must consider the criteria set forth in General Statutes §§ 46b-81 and 46b-82. Pursuant to § 46b-81 (c): "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties

the plaintiff held more responsibility for the breakdown of the marriage than did the defendant, we conclude on the basis of the record before us, in combination with the specific findings of the trial court, as highlighted, that it was an abuse of discretion not to award some form of alimony to the plaintiff in this case.

On the date of the dissolution hearing, the plaintiff had little or no income, while the defendant had a net income of approximately $889 weekly. The plaintiff was ordered to assume and to pay a substantial portion of the marital debt, despite having little or no income to pay that debt, and the court did not make any findings regarding his prospects for employment or his earning capacity. Because the parties did not have substantial personal assets, it reasonably is foreseeable that if the plaintiff complied with the court's orders, he quickly would become destitute, to the extent that he was not already destitute. See id.; *Kovalsick* v. *Kovalsick*, supra,

in the acquisition, preservation or appreciation in value of their respective estates."

General Statutes § 46b-82 (a) provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order pursuant to subsection (b) of this section or an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. The court may order that a party obtain life insurance as such security unless such party proves, by a preponderance of the evidence, that such insurance is not available to such party, such party is unable to pay the cost of such insurance or such party is uninsurable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

125 Conn. App. 275. Accordingly, under the facts of this case, we conclude that the trial court abused its discretion by failing to award some form of alimony to the plaintiff.

## IV

The plaintiff also claims that the court abused its discretion in assigning to him 72 percent of the marital debt and awarding to him only the property then presently in his possession. He also argues that the court's awarding him one half of the parties' security deposit but not requiring the defendant immediately to pay him his half, was improper. It is a generally accepted principle that, "when an appellate court reverses a trial court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders." (Internal quotation marks omitted.) Id., 276; see also *Mickey* v. *Mickey*, 292 Conn. 597, 615–16, 974 A.2d 641 (2009). "Because the financial orders in an action for dissolution of marriage are of necessity interwoven and because the rendering of a judgment in an action for the dissolution of marriage is a carefully crafted mosaic"; (internal quotation marks omitted) *Watrous* v. *Watrous*, supra, 108 Conn. App. 819; each element of which may be dependent on the other, the plaintiff's remaining claims necessarily are affected by the court's abuse of discretion in declining to award alimony to the plaintiff. Accordingly, we conclude that we need not consider on appeal the plaintiff's claims concerning the allocation of the debt or the property distribution, including the security deposit. See *Pellow* v. *Pellow*, supra, 113 Conn. App. 129–30 (ordering trial court to reconsider all financial orders on remand, but declining on appeal to review claims concerning child support after determining alimony award and property division were excessive).

The judgment is reversed with respect to the financial and property orders entered by the trial court at the time of the dissolution judgment, but specifically excluding any matters relating to any personal property that previously was discarded or otherwise disposed of by either party or any other person, and the matter is remanded for a new hearing pursuant to General Statutes § 46b-81 and § 46b-82 on all other financial and property matters. The judgment is affirmed in all other respects.

In this opinion WEST, J., concurred.

LAVINE, J., concurring. I agree with the result of the majority opinion, but I do not agree that the pro se plaintiff's claim regarding judicial bias, never raised or ruled on in the trial court, is reviewable. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Practice Book § 60-5; see also *State* v. *Marcisz*, 99 Conn. App. 31, 38, 913 A.2d 436 (no review of unpreserved claim), cert. denied, 281 Conn. 922, 918 A.2d 273 (2007). The plaintiff did not request extraordinary review of his claim under any of the exceptions to the preservation rule; i.e., Practice Book § 60-5 (plain error); *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) (review of unpreserved constitutional claims). Moreover, as the majority points out, the plaintiff failed to provide a legal analysis of his claim of judicial prejudice. Our appellate courts repeatedly have stated that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Connecticut*

*Light & Power Co.* v. *Dept. of Public Utility Control,* 266 Conn. 108, 120, 830 A.2d 1121 (2003). In my opinion, each time an appellate court decides to reach the merits of an unpreserved[1] or unanalyzed claim, a message is sent to litigants and the bar that is contrary to the rules of practice and case law and encourages litigants to flout the rules designed to ensure that the process is fair to all participants.

I understand that the court "has always been solicitous of the rights of pro se litigants and, like the trial court, will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party." (Internal quotation marks omitted.) *Shobeiri* v. *Richards,* 104 Conn. App. 293, 296, 933 A.2d 728 (2007). "Even pro se litigants, however, must provide this court with citations to rules of law that support their arguments." *Emerick* v. *Kuhn,* 52 Conn. App. 724, 756 n.22, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied sub nom. *Emerick* v. *United Technologies Corp.,* 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). When an appellate court addresses the merits of an inadequately analyzed claim, it nonetheless must frame the issue, identify the relevant facts and law and craft a reasoned decision, an awkward process that conflicts with the court's cardinal duty of dispassionately analyzing arguments presented *by the litigants.*

It is particularly troubling when a party raises a claim of judicial bias for the first time on appeal, never having filed a motion to recuse or disqualify in the trial court. I agree with the majority that a claim of judicial bias strikes at the core of judicial integrity. The significance of such allegations makes it essential that the trial court

---

[1] I recognize that there are valid exceptions affording review in some cases. See, e.g., *State* v. *Golding,* supra, 213 Conn. 239–40.

be given an opportunity to address the claims of a litigant who feels he or she is not being treated fairly and that opposing counsel, or a self-represented party, have an opportunity to develop the record and to respond.[2] It often has been said that to raise a claim for the first time on appeal is to ambush the trial court. See, e.g., *DuBaldo Electric, LLC* v. *Montagno Construction, Inc.*, 119 Conn. App. 423, 443, 988 A.2d 351 (2010) ("to review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than trial by ambuscade of the trial judge" [internal quotation marks omitted]). This is particularly so relative to claims of judicial bias raised for the first time long after a verdict has been returned or a decision rendered. Such claims, not raised at trial but asserted on appeal, also put the opposing party at substantial disadvantage. How can an opposing party be expected to respond appropriately to allegations—many of which may be baseless—on a fragmentary record?

Disappointed litigants must not be encouraged to use an appeal as an opportunity to raise a claim that assaults the integrity of the trial court at its most fundamental level without having given the court, and the opposing party, an opportunity to respond.[3] In the absence of an

[2] This is not to say that the rules of practice fail to provide the opposing party with a quiver of procedural arrows to challenge unpreserved claims raised for the first time on appeal. All too often, however, an opposing party fails to take advantage of the rules of practice, as in this case where the defendant failed to file an opposing brief.

[3] "Any claim of judicial bias is taken as an attack on the fairness of the judicial process. We take this opportunity to remind [litigants] once again that claims of judicial bias are serious matters that should not be raised for the mere purpose of seeking a reversal of a judgment. See *Wendt* v. *Wendt*, [59 Conn. App. 656, 693, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000)]. See also *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 26 n.10, 961 A.2d 1016 (2009); *Evans* v. *Commissioner of Correction*, 37 Conn. App. 672, 676 n.6, 657 A.2d 1115 (counsel cautioned against making claims of bias not intended to question court's integrity), cert. denied, 234 Conn. 912, 660 A.2d 354 (1995)." *Malave* v. *Ortiz*, 114 Conn. App. 414, 434 n.18, 970 A.2d 743 (2009).

objection and an adequate record in the trial court, this court should not countenance such claims by reviewing them unless the record demonstrates flagrant and egregious bias on the part of the trial court so substantial that a reasonable person would conclude that the proceeding fundamentally was unfair. In our desire to ensure that every party has a fair trial before an unbiased judge, we must not create a situation that is unfair to opposing parties who have abided by the rules. On the basis of my review of the record in this appeal, I do not believe that the plaintiff's claim of judicial bias, never raised or ruled on in the trial court, warrants review.

For these reasons, I concur in the result of the majority opinion.