******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SEAN C. KEENAN *v.* PATRICIA A. CASILLO
(AC 34872)

Gruendel, Bear and West, Js.

*Argued February 10—officially released April 22, 2014*

(Appeal from Superior Court, judicial district of
Danbury, Hon Howard T. Owens, Jr., judge trial referee
[motion to remove guardian ad litem]; Adelman, J.
[judgment].)

*Samuel V. Schoonmaker IV*, with whom was *Wendy
Dunne DiChristina*, for the appellant (plaintiff).

*Brendon P. Levesque*, with whom were *Karen L.
Dowd* and, on the brief, *Susan A. Moch*, for the appel-
lee (defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Sean C. Keenan, appeals from the judgment of the trial court awarding him and the defendant, Patricia A. Casillo, joint legal custody of their minor children, and ordering him to pay permanent alimony and child support to the defendant. On appeal, the plaintiff claims that the court erred in (1) awarding the parties joint custody of the children, (2) refusing to remove the guardian ad litem, and (3) awarding permanent alimony to the defendant. We affirm the judgment of the trial court.

The parties married in April, 2007. They have two minor children, a daughter born in December, 2007, and a son born in August, 2009. In October, 2010, the plaintiff filed for the dissolution of their marriage, and sought joint custody of their children. The defendant's subsequent accusations of sexual abuse by the plaintiff against their daughter changed the tenor of the parties' relationship. The parties were unable to reach a settlement, and a trial followed. The court thereafter issued a memorandum of decision, finding that joint custody was in the best interests of the children. It also ordered the plaintiff to pay the defendant permanent alimony and child support. This appeal followed.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 492–93, 830 A.2d 394 (2003).

I

The plaintiff claims that the court erred in ordering joint custody because it lacked the statutory authority to do so. He alternatively argues that the court's joint custody orders are inconsistent with its findings and

the evidence. We disagree.

A

The plaintiff first claims that the court lacked statutory authority to award joint custody, thus depriving him of due process of law. We disagree.

The following undisputed facts are relevant to this issue on appeal. When the plaintiff filed his complaint in October, 2010, he asked for joint custody of the minor children. After the defendant accused the plaintiff of improper sexual contact with their daughter in November, 2010, both parties moved for sole custody pendente lite.[1] The plaintiff, however, did not amend his complaint to remove the requested relief of joint custody.

Before trial began in April, 2012, the parties filed proposed orders with the court. In those orders, the defendant proposed that she receive sole custody of the children, and the plaintiff similarly proposed that he receive sole custody. During trial, however, the defendant orally informed the court that she would be seeking joint custody as an alternative to sole custody. She subsequently filed a revised proposed custody and parenting plan, stating that she "should have sole legal custody of the minor children . . . . In the alternative, the parties shall have joint legal custody of the minor children, with final decision making authority to be with the [defendant]."

In its decision, the court recognized that "[i]n order to enter an order of joint legal custody, the court must find that such an order in addition to being in the best interests of the children is also based on an agreement of the parties or upon motion of at least one of the parents. *Tabackman* v. *Tabackman*, [25 Conn. App. 366, 368, 593 A.2d 526] (1991)." After concluding that such requirements were met, the court ordered joint legal custody.

General Statutes § 46b-56a (c) provides: "If only one parent seeks an order of joint custody upon a motion duly made, the court may order both parties to submit to conciliation at their own expense with the costs of such conciliation to be borne by the parties as the court directs according to each party's ability to pay." Our precedent is clear, however, that "joint custody cannot be an alternative to a sole custody award where neither seeks it and where no opportunity is given to the recalcitrant parent to embrace the concept. Further, it is significant that the statute contains no additional subsection providing for a procedure in the event neither parent seeks joint custody." *Emerick* v. *Emerick*, 5 Conn. App. 649, 658, 502 A.2d 933 (1985), cert. dismissed, 200 Conn. 804, 510 A.2d 192 (1986).

The plaintiff claims that the court lacked statutory authority to grant joint custody to the parties in the present case. He states that although he originally sought joint custody in his complaint, both parties

thereafter filed pendente lite motions with the court seeking sole custody of the children. The plaintiff also claims that the defendant's proposed orders of joint custody were filed after the trial was completed, and therefore do not take the place of a motion for leave to amend or serve as a properly pleaded basis for joint custody. Consequently, the plaintiff concludes that he was deprived of his constitutional right to due process because he lacked notice that the court was considering an award of joint custody, and he therefore was not given an opportunity to be heard on the matter.

Our previous decision in *Giordano* v. *Giordano*, 9 Conn. App. 641, 520 A.2d 1290 (1987), is dispositive of this issue. In *Giordano*, "[a] request for joint custody was made by the defendant in his answer and counterclaim, but was not specifically raised by either party thereafter during the course of the trial, although the court inquired of some witnesses about custody arrangements other than sole custody." Id., 643. In that decision, we stated: "When one of the parties has sought joint custody in the pleadings, it is not error for the court, in the exercise of its discretion, to award joint custody." Id., 645; see also *Tabackman* v. *Tabackman*, supra, 25 Conn. App. 368 ("[a] court may award joint legal custody . . . if the parties agree to joint custody or if one party seeks joint custody").

In the present case, there was a pleading requesting joint custody, namely, the plaintiff's October 6, 2010 complaint.[2] The court, therefore, had statutory authority to grant joint custody to the parties, so long as it found that it was in the best interests of the children.

We further conclude that there was no violation of due process. See *In re Jason M.*, 140 Conn. App. 708, 716, 59 A.3d 902 (in order to afford due process, "[p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified"), cert. denied, 308 Conn. 931, 64 A.3d 330, cert. denied,     U.S.    , 134 S. Ct. 701, 187 L. Ed. 2d 564 (2013). In addition to the plaintiff's complaint, which sought joint custody, there was testimony at trial about whether the parties could coparent. The defendant's attorney also indicated at trial that her proposed orders would include a request for joint custody. The plaintiff was therefore on notice that the issue of custody, in general, was before the court and that it had the authority to enter an order of joint custody. As a result, the plaintiff had a fair opportunity to be heard on the issue.[3]

### B

The plaintiff alternatively claims that the court's joint custody orders do not logically and legally flow from its findings and, consequently, should be vacated. We do not agree.

The following additional facts, as set forth in the

court's memorandum of decision, are relevant to this claim. When the defendant accused the plaintiff of improper sexual contact with their daughter,[4] "the plaintiff responded with horror and then with anger. . . . The anger, unfortunately, has not passed despite the considerable period of time that has passed. It is, to a large degree, that anger that calls into question any joint custody arrangement for the two very young children. . . . In [the plaintiff's] words, expert help would be required for the [parties] to come to [a] 'common understanding of what happened and what did not happen' before it would be possible to coparent. . . .

"The plaintiff is, by all accounts, an excellent parent to both of his children. He is described as attentive and attuned; appropriate and disciplined; and very loving. . . . Nevertheless, the level of his anger is apparent to all, and it calls his overall parental judgment into question. . . . [His] anger has already had negative consequences for his children just within the eighteen months since [the parties] have lived apart. Most significantly, his daughter experienced unnecessary anxiety by his cancellation of her therapy last spring. . . . [T]he plaintiff was upset that Dr. [Mary Frances] Sink [the child's therapist] would not speak to him on any type of regular basis and that he was not informed that the defendant was using a particular type of behavior modification technique at her home on the therapist's advice. He withdrew his consent for the therapy and insisted that a new, more cooperative therapist be hired. . . . The matter was resolved when he agreed to attempt to work out his relationship with Dr. Sink, and she agreed to be more communicative. However, the little girl was in some distress during the lull and both the [guardian ad litem] and Dr. [Joan] Oppenheim [the court appointed evaluator] noted that stance on the part of the plaintiff [was] a poor parenting decision given the situation. The court agrees. . . .

"The court has very serious concerns about the parenting skills of the defendant. Her behavior around the allegations of abuse in the fall of 2010 are very difficult to understand. When she first claims to have seen the abuse, she did nothing to stop it and even allowed the plaintiff to have unsupervised access to the girl for two more nights. . . . Despite ongoing concerns voiced by the defendant during the investigation, she once again does not seek to go forward with a hearing, but agrees to provide the plaintiff with additional unsupervised access to the children . . . . It is extremely difficult to understand why she would agree to such terms if she believed that her daughter had been molested. The defendant testified that she felt that she had no choice, but that testimony, along with the other troubling behavior noted, makes the excuse very unconvincing.

"In addition to the unexplained behavior . . . the defendant was not at all consistent in to whom she

would make the allegations. She did not report it to the children's pediatrician even though she brought [both children] to the office within days of reporting the behavior to [the Department of Children and Families]. She brought the girl to a local emergency room after one overnight visit [with the defendant] with the claim that abuse had occurred and the child was complaining of pain, but left the facility against medical advice without allowing her daughter to complete the work up. The defendant's reason for leaving was entirely lacking in credibility.

"All of these inconsistencies, as well as others not enumerated, call into question the quality of the defendant's parental decision-making. Either she knew the allegations were false and there was nothing to protect her children from, or she believed the truth of the allegations and felt helpless to protect her daughter. A third possibility is that she believed the allegations to be true and just did not care enough to take action. Having already indicated that the court does not find any evidence of malicious intention on the part of the defendant, the first possibility is to be ruled out. The last one is also not a real possibility. That leaves a mother with so little fortitude and so few personal resources that she cannot protect her own child from a perceived danger. Hardly an endorsement for a custodial parent.

"The [guardian ad litem] recommended to the court that, despite all of these very negative indicators, an attempt to maintain a joint legal custodial arrangement might still be in the best interests of the minor children. It is partially due to the fact that the children are so young that she believes they need the joint custodial arrangement. She points to the fact that, at the present time, there are no safety issues in either home and both children are deeply and closely bonded to both parents. She also sees the parents needing each other. Despite the plaintiff's claims that he can adjust his work schedule to be the full-time custodial parent, that claim is not very credible. The defendant, for her weaknesses, is a fairly competent parent under most situations and is available due to her disability to be a full-time mother. Having a parent rather than a paid worker be the primary caregiver to the children is certainly preferable if possible to arrange.

"The statutory criteria for custody orders are spelled out in . . . General Statutes § 46b-56 (c).[5] In reviewing those criteria, the court is struck by the inability of either parent to significantly meet some of those criteria individually. Neither parent, for example, has demonstrated a great ability to understand or meet the 'temperament and developmental needs of the child.' Ample evidence of the defendant's weakness in this area was provided by the videotapes she made as part of her litigation efforts, and the plaintiff's lack of ability in this area was also clear in his decision to terminate his

daughter's therapy for a six week period. Clearly neither parent has excelled in promoting the children's relationship with the other parent. The court recognizes that there is a distinct possibility that the plaintiff would quickly marginalize the defendant's parental role if he were given sole custody, while her past actions in this litigation does not recommend her for that role either. It would appear that the best interests of the children would be served by forcing these parents to cooperate with one another at least on a limited basis and with an appropriate structure imposed on them." (Footnotes altered.) The court thereafter ordered the parties to share joint legal custody of the two minor children.

In deciding whether to order joint custody in a particular circumstance, § 46b-56 instructs the court to look to the best interests of the child. Section 46b-56 (a) provides in relevant part: "Subject to the provisions of section 46b-56a, the court may assign parental responsibility for raising the child to the parents jointly, or may award custody to either parent or to a third party, according to its best judgment upon the facts of the case and subject to such conditions and limitations as it deems equitable. . . ." Furthermore, § 46b-56 (b) provides in relevant part: "In making or modifying any order as provided in subsection (a) of this section, the rights and responsibilities of both parents shall be considered and the court shall enter orders accordingly that serve the best interests of the child and provide the child with the active and consistent involvement of both parents commensurate with their abilities and interests. . . ."

The plaintiff claims that the court's decision to award joint custody does not logically and legally flow from its findings. He states that the court found that he was an excellent parent, whereas the court described the defendant's parenting skills as only fairly competent. In the court's full decision, however, it described, at length, the strengths and weaknesses of both the plaintiff and the defendant with regard to their parenting. It also cited the guardian ad litem's recommendation that an order of joint custody was in the best interests of the children. After deliberating on the factors provided in § 46b-56 (c), the court set forth various reasons for ordering joint custody. Most important was the court's finding that due to the parties' respective weaknesses, neither the plaintiff nor the defendant would be the proper sole custodial parent of the children. Rather, it found that joint custody had the greatest potential to serve the best interests of the children. "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Internal quotation marks omitted.) *Demartino* v. *Demartino*, supra, 79 Conn. App. 492. The court's findings were not clearly erroneous because they were supported by evidence in the record. We therefore conclude that the joint custody

order logically and legally flows from the court's evidentiary findings and from its determination of what was in the best interests of the children.

## II

The plaintiff next raises claims regarding the guardian ad litem. The plaintiff argues that the court erred in refusing to remove Attorney Sharon Wicks Dornfeld as the guardian ad litem, and that it further committed plain error by allowing Dornfeld, who was also serving as the attorney for the minor children, to abandon her role as attorney to testify at trial as the guardian ad litem. He lastly argues that the court improperly delegated judicial authority to Dornfeld. We do not agree.

The following additional facts are relevant to the resolution of the aforementioned claims. Dornfeld served as the guardian ad litem for the minor children beginning on November 8, 2010. Following an argument between the parties on November 17, 2010, regarding the defendant's allegation that the plaintiff sexually abused their three year old daughter, the defendant filed a complaint with the local police department, and the plaintiff was arrested. A protective order was issued, requiring the plaintiff to leave the home and mandating that the plaintiff visit with the children under supervision. On November 23, 2010, however, the parties entered into a stipulation in which the children would not be supervised when with the plaintiff. Despite this agreement, the defendant subsequently made a complaint to the Department of Children and Families (department) expressing concern that her daughter was being sexually abused by the plaintiff.[6]

In February, 2011, after the defendant filed her complaint with the department, Dornfeld filed an ex parte motion to modify the plaintiff's parental access to require supervised visitation. The court denied that motion and found that "after weighing all of the testimony and evidence . . . the best interests of the child would be impaired by modifying the order of January 10, 2011, and that order is reinstated." The plaintiff thereafter filed a motion to remove Dornfeld as guardian ad litem, which was denied by the court.

## A

The plaintiff first argues that the court erred in denying his motion to remove Dornfeld as the guardian ad litem. We cannot agree.

In the plaintiff's motion to remove Dornfeld, he stated that she, among other things, had abused and misused her power as guardian ad litem, attempted to cover up her negligent actions by pressuring and threatening the plaintiff, and interfered with the ongoing independent psychological evaluation of the parties. In his memorandum in support of the motion for removal, he argued: "Dornfeld's conduct and lack of objectivity has made it impossible for her to fulfill the role of [guardian ad

litem] in a fair and nonprejudicial manner. As evidenced in this motion, [Dornfeld] has engaged in gross misconduct and has apparently become personally involved in the situation in a manner designed to cover up her failure to act, rather than to safeguard the best interests of her ward[s]." He further stated: "Even if the court concludes that [Dornfeld's] conduct did not rise to the level of misconduct, it has been unprofessional and has undermined the plaintiff's confidence in her ability to act in the best interests of the child[ren] in such a way that makes it impossible for her to continue in the role of [guardian ad litem]."

The court denied the plaintiff's motion to remove Dornfeld as the guardian ad litem, finding that "[a]fter a lengthy hearing and after considering the evidence presented, the court finds that it is not unusual for a party who is charged with misconduct, as in the present case, to remonstrate." The court then concluded that it was "not satisfied after hearing all the evidence that [Dornfeld] has manifested any bias or prejudice that would affect the outcome of the case."

The plaintiff claims that the court erred in denying his motion to remove Dornfeld as the guardian ad litem. He first argues that the court had ample evidence that Dornfeld was acting outside the proper bounds of a guardian ad litem. He also argues that Dornfeld was attempting to manipulate the court in a way that prejudiced his case, but in deciding on his motion to remove, the court misapplied the best interests standard to require a showing of future prejudice that would affect the outcome of the case.

A court is permitted to remove a guardian ad litem in dissolution matters, subject to General Statutes § 45a-132, which provides in relevant part: "(f) The guardian ad litem may be removed by the judge or magistrate which appointed the guardian ad litem, without notice, whenever it appears to the judge or magistrate to be in the best interests of the ward or wards of the guardian." Multiple decisions of our Superior Court have interpreted this statute to mean that "it is the burden of the [moving party] . . . to allege and prove that the [guardian ad litem] should be disqualified from representing the interests of the minor child because her continued representation prejudices the [moving party] from prosecuting his case." *Petrone* v. *Connolly*, Superior Court, judicial district of New London, Docket No. FA-09-4111149-S (May 8, 2013) (36 Conn. L. Rptr. 600); see also *Rubenstein* v. *Rubenstein*, Superior Court, judicial district of New London, Docket No. FA-96-0537581-S (March 5, 2004) (moving party needs to prove prejudice in prosecuting claim for custody based on prior or present positions taken by guardian ad litem on behalf of minor child).

We conclude that the court did not err in denying the motion to remove Dornfeld as the guardian ad litem.

The standard set forth in § 45a-132 focuses on the best interests of the children. The court held that, after reviewing all of Dornfeld's allegedly improper actions, she had not "manifested any bias or prejudice that would affect the outcome of the case." This broad standard, used by the court in the present case, encompassed the requirements as set forth by multiple decisions of our Superior Court. Here, the court determined whether the outcome of the case had been prejudiced in any manner, and, by answering in the negative, it ensured that the best interests of the children were protected. We therefore cannot say that the court erred in denying the plaintiff's motion to remove Dornfeld as the guardian ad litem.

B

The plaintiff further claims that it was plain error for the court to allow Dornfeld to testify as the guardian ad litem after she previously had acted as the attorney for the minor children. We disagree.

The court appointed Dornfeld as the attorney for the minor children on April 29, 2011, and, after that appointment, she testified at pendente lite hearings in the dissolution action. After the case failed to settle, Dornfeld sought to vacate her appointment as attorney for the minor children. In her motion, she cited Rule 3.7 of the Rules of Professional Conduct, which provides that a lawyer shall not act as an advocate at a trial in which she is likely to be a necessary witness. She made clear, however, that "[t]he children, due to their young ages, have not communicated any privileged or confidential information to me." The court thereafter vacated Dornfeld's appointment as attorney for the minor children, and allowed her to testify at trial in her capacity as guardian ad litem.

The plaintiff did not preserve this claim in the proceeding before the trial court and now seeks review pursuant to the plain error doctrine. "Codified in Practice Book § 60-5, [t]he plain error doctrine . . . is a doctrine that should be invoked sparingly and only on occasions requiring the reversal of the judgment under review. . . . Success on such a claim is rare. Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"We engage in a two step analysis in reviewing claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the [party] simply to demonstrate that his position

is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal. . . . Because [a] party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice . . . under the second prong of the analysis we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 131 Conn. App. 270, 273–74, 26 A.3d 704, cert. denied, 302 Conn. 948, 31 A.3d 838 (2011).

In support of his argument that the court committed plain error by permitting Dornfeld to testify, the plaintiff cites General Statutes § 46b-129a (2) (D), which provides in relevant part: "No person who has served as both counsel and guardian ad litem for a child shall thereafter serve solely as the child's guardian ad litem." Section 46b-129a, however, is contained within chapter 815t of the General Statutes and is thus limited to juvenile matters. This statute does not control dissolution matters like the present case. Rather, chapter 815j of the General Statutes controls marital dissolution matters. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003). Chapter 815j does not have a similar limitation as that in chapter 815t on a person serving both as a guardian ad litem and as an attorney for the same minor children. Such limitation, then, cannot be read into chapter 815j. The plaintiff's reliance on § 46b-129a (2) (D) is therefore misplaced. As a result, we conclude that the court did not commit plain error by allowing Dornfeld to testify as the guardian ad litem after serving for a period of time both as attorney for the minor children and as their guardian ad litem.

### C

The plaintiff also argues that the court improperly delegated its judicial authority to the guardian ad litem. He argues that although courts have statutory authority to appoint a guardian ad litem, the court must not delegate its judicial authority to such person. More specifically, he claims that the court ordered joint legal custody to the parties on terms substantially similar to those set forth by the guardian ad litem in her recommendations to the court; allowed the guardian ad litem to select the parties' coparenting therapist; and required each party to select an individual therapist from a list prepared by the guardian ad litem. This claim is unavailing.

"It is well settled authority that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended." (Internal quotation marks omitted.) *Nashid* v. *Andrawis*, 83 Conn. App. 115, 120, 847 A.2d 1098, cert. denied, 270 Conn. 912, 853 A.2d 528 (2004). A court improperly delegates its judicial authority to a guardian ad litem when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority. *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 628–29, 561 A.2d 443 (1989).

In the present case, the court did not give Dornfeld authority to make the final decision regarding custody of the children, nor did it allow her to issue orders that were binding on the parties. Rather, the court accepted the recommendations that Dornfeld submitted to the court and implemented them in its own orders. It also accepted Dornfeld's recommendations in choosing a therapist for each of the parties. Dornfeld's involvement in this marital dissolution case, therefore, was proper. A court is permitted to seek advice, and accept recommendations, from the guardian ad litem. *Nashid* v. *Andrawis*, supra, 83 Conn. App. 120. The plaintiff's disagreement with Dornfeld's recommendations, and the court's agreement and adoption of those recommendations in its orders, in no way supports a conclusion that the court improperly delegated its judicial authority to her.

### III

The plaintiff lastly claims that the court abused its discretion in awarding permanent alimony to the defendant. We disagree.

The court, in its memorandum of decision, found the following: "[M]any of the details of [the parties'] finances are clear and undisputed including the fact that the great majority of the family's assets have been spent during this litigation. The plaintiff has a base salary exceeding three hundred thousand dollars gross annually and historically has also received annual bonus payments in six figure amounts. His most recent bonus received a few months ago was almost equal to his base salary. In addition to his salary, he enjoys generous employment benefits that have significant financial value to him. The defendant is on social security disability benefits receiving less than sixteen thousand dollars annually. The plaintiff argued during the trial that the defendant can work, but that testimony was based on his own observations, and he provided no medical testi-

mony or other expert opinion of any kind to support his conclusions. An alimony award of some type is clearly warranted in this matter based on the criteria as set forth in . . . General Statutes § 46b-82.

"The marital home is currently being marketed for sale and has been on the market for just a little over one year. . . . They also own the adjacent lot which does not appear to be part of the four plus acres on which the residence sits, but is being indicated as 'available' according to the listing information . . . . The combined value of the real estate based on the financial affidavits of the parties is over \$1.3 million. . . .

"A comparison of the financial affidavits . . . filed with the court while the case has been pending shows that approximately \$365,000 in deferred income assets were liquidated along with approximately \$120,000 in liquid bank accounts. A \$50,000 loan against the plaintiff's 401 (K) plan was taken, and he also liquidated a large portion of the account. Most recently in early April, 2012, the plaintiff's stocks were sold valued at approximately \$61,000. He reported net proceeds from that sale in the amount of \$35,000. Testimony was offered that the plaintiff, without permission, also sold the defendant's stocks originally purchased for \$22,000, and those funds were spent by the plaintiff on litigation costs and other expenses. . . .

"The court has considered all of the testimony offered during the trial and its observation of the demeanor of the parties and other witnesses. . . . Consideration has also been given to the various statutory criteria for . . . making financial orders . . . . A review of the applicable case law was also conducted by the court." (Footnote omitted.) The court then ordered the plaintiff to pay permanent alimony to the defendant, in addition to child custody payments.[7]

"We will not reverse a trial court's rulings regarding financial orders unless the court incorrectly applied the law or could not reasonably have concluded as it did. . . . A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other. . . . A reviewing court must indulge every reasonable presumption in favor of the correctness of the trial court's action to determine ultimately whether the court could reasonably conclude as it did. . . . This standard of review reflects the sound policy that the trial court has the opportunity to view the parties first hand and is therefore in the best position to assess all of the circumstances surrounding

a dissolution action, in which such personal factors such as the demeanor and the attitude of the parties are so significant." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481–82, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

The plaintiff argues that an award of permanent alimony to a forty year old woman after a three year marriage was an abuse of discretion. He states that the court failed to recognize that the defendant's past health concerns and receipt of social security benefits are not conclusive proof that she is permanently disabled from work.[8]

"[Section] 46b-82 governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties . . . . In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Internal quotation marks omitted.) *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 536, 21 A.3d 489 (2011).

The court did not abuse its discretion in awarding permanent alimony to the defendant. The court cited § 46b-82 and thereafter described, in detail, the plaintiff's and the defendant's income and assets. Because the court considered all of the relevant statutory criteria, it is given broad discretion in awarding alimony payments. *Kunajukr* v. *Kunajukr*, supra, 83 Conn. App. 481; see also *McMellon* v. *McMellon*, 116 Conn. App. 393, 396, 976 A.2d 1 (no bright line rule as to how long a marriage must last for one party to be entitled to permanent alimony), cert. denied, 293 Conn. 926, 980 A.2d 911 (2009). We therefore review the record only to determine if the court correctly applied the law and reasonably concluded that permanent alimony to the defendant was appropriate under the circumstances of this case. We conclude that it did.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Pendente lite motions address the temporary custody of the children during the pendency of the action. In response to the parties' motions, the court ordered, pendente lite, that the plaintiff would have unsupervised parenting with the minor children, and set forth a schedule. "[P]endente lite orders, by their very definition, are orders that continue to be in force during the pendency of a suit, action, or litigation. . . . Pendente lite orders necessarily cease to exist once a final judgment in the dispute has been rendered because the purpose is extinguished at that time." (Citation omitted; internal quotation marks omitted.) *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 309, 733 A.2d 907 (1999).

[2] At no time did the plaintiff seek to amend that complaint.

[3] In fact, the plaintiff presented an expert who was questioned by the plaintiff's counsel about whether the plaintiff and the defendant could copar-

ent successfully.

[4] The court stated that it "need not describe in detail the specific allegations raised by the defendant against the plaintiff as there is no credible evidence that they are true." It went on to state, however, that "[i]n the same vein, there is no credible evidence that the defendant fabricated them. Because her allegations were not malicious in nature, how she came about to believe these horrid things about [the defendant] is now simply not relevant. How each party reacted to the allegations is, on the other hand, most relevant to the court's decision."

[5] General Statutes § 46b-56 (c) provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers."

[6] Following investigation, the department found that the allegations were unsubstantiated.

[7] The plaintiff was required to pay the defendant a weekly amount of $500 in child support and $1200 in alimony. Despite the use of the term "lifetime," the court did not order that the alimony be nonmodifiable as to term or amount. See General Statutes § 46b-86 (a); but see General Statutes § 46b-85.

[8] Despite making this bald assertion, the plaintiff fails to point to evidence, or a lack of evidence, that would support a conclusion that the court's assessment of the defendant's health concerns was clearly erroneous. We therefore only address his claim that the court's alimony award was an abuse of discretion.