******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DANIEL LYNCH *v.* LAURIE LYNCH
(AC 35413)

Lavine, Bear and Borden, Js.*

*Argued March 18—officially released September 30, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Hon. Howard T. Owens, Jr., judge trial referee
[dissolution judgment]; Adelman, J. [orders as to
alimony payment, award of appellate counsel fees,
motions for modification, contempt, reargument, order
reducing amount of alimony overpayment, motions to
stay alimony, support obligations, for order to offset
alimony payments].)

*Daniel M. Lynch*, self-represented, the appellant
(plaintiff).

*Christopher T. Goulden*, for the appellee (defendant).

*Opinion*

BEAR, J. The present matter previously was before this court in *Lynch* v. *Lynch*, 135 Conn. App. 40, 43 A.3d 667 (2012) (*Lynch I*). This court reversed in part the dissolution judgment of the trial court, *Hon. Howard T. Owens, Jr.*, judge trial referee, "as to the financial orders only, except with respect to the portion of the court's order granting the defendant's February 4, 2009 pendente lite motion for modification that applies retroactively from February 4, 2009, until the date of judgment," and accordingly remanded the matter. Id., 58. The trial court, *Adelman, J.*, subsequently entered new financial orders pursuant to *Lynch I* from which the plaintiff, Daniel Lynch, now appeals. The plaintiff also appeals from the court's orders with respect to several motions filed after *Lynch I* and both before and after the court's December 13, 2012 memorandum of decision in this appeal.

The plaintiff specifically claims that the court improperly (1) awarded alimony to the defendant, Laurie Lynch, and not to him; (2) denied his request for equitable financial relief in his motion for modification, even though he had met his burden of establishing a substantial change in circumstances; (3) granted the defendant's October 11, 2012 motion for contempt; (4) granted the defendant's May 1, 2013 postjudgment motion for contempt; (5) calculated the reimbursement for stipulated shared household expenses owed to him by the defendant; (6) failed to calculate a pendente lite arrearage owed to him by the defendant; (7) awarded $7500 in appellate attorney's fees to the defendant; (8) entered financial orders that were inequitable to him and that demonstrated the court's bias against him; and (9) failed to hear certain of his motions and denied others without consideration of his due process rights. We disagree with all nine of the plaintiff's claims and affirm the judgment of the trial court.

## I

## FACTS AND PROCEDURAL HISTORY

### A

### Previous Appeal

As this court noted in *Lynch I*, "[t]he parties were married in 1992, and two children were born of the marriage.[1] On September 14, 2009,[2] the court rendered judgment dissolving the marriage on the ground of irretrievable breakdown." (Footnotes altered.) Id., 42. Part of the dissolution judgment involved the court's decision to grant the defendant's February 4, 2009 pendente lite motion to modify the parties' December 11, 2008 stipulation that they would equally divide the payment of the household expenses.[3] Id., 43. The defendant's motion alleged that the plaintiff's income had increased and, therefore, asked the court to increase, in turn, the

plaintiff's payment obligation. Id. The court accordingly "ordered the plaintiff to pay 60 percent and the defendant to pay 40 percent of the obligations set forth in the stipulation"; id.; from February 4, 2009, to the date of the sale and transfer of the marital home.[4] Also among the financial orders entered by the court were an alimony award of $200 per week and a child support award of $135 per week, both to be paid by the plaintiff to the defendant. Id.

The plaintiff appealed from these orders and filed four subsequent amended appeals to challenge certain of the court's postjudgment rulings as well, one of which awarded $7500 in appellate attorney's fees to the defendant. Id., 44. We reversed that part of the dissolution judgment that ordered the plaintiff to pay to the defendant 30 percent of the value of his unsold books on the ground that the court impermissibly considered the plaintiff's intellectual property twice for alimony and property distribution purposes. Id., 52–53. We then reversed almost all of the remaining financial orders[5] in accordance with the principle that "[t]he [financial] orders [in a domestic relations matter] are interwoven and constitute a carefully crafted mosaic [and] [w]hen we disrupt a single tile in this mosaic, we place in doubt the propriety of other financial orders that the trial court may have deemed equitable in relation to the entire distribution scheme." (Internal quotation marks omitted.) Id., 54. We affirmed the court's decision to grant the defendant's motion for modification, but it did so only with respect to the period of time between February 4 and September 14, 2009. Id., 46–48.

Also relevant to this appeal is our conclusion in *Lynch I* that the "court improperly failed to address [the plaintiff's] January 29, 2009 pendente lite motion for contempt," in which he alleged that the defendant had failed to reimburse him for household expenses that he had paid in full, even though they were subject to the 2008 stipulation. Id., 49. "At trial, the defendant testified that she believed she owed the plaintiff some money, but that she did not know how much because she had no documentation to show exactly what he had paid toward the expenses at issue in the stipulation." Id. The court nonetheless failed to address this conceded arrearage, even though it granted the defendant's motion for modification. Id. We concluded that the court's omission constituted an impermissible retroactive modification of the stipulation under General Statutes § 46b-86 and a violation of the plaintiff's vested property right in the arrearage. Id., 50. Therefore, in remanding the matter for reconsideration of the financial orders, we also ordered that the court determine "the amount of the pendente lite arrearage to be included in the judgment, along with an appropriate order for its payment." Id., 51.

The rescript in *Lynch I* provided: "The judgment is

reversed as to the financial orders only, except with respect to the portion of the court's order granting the defendant's February 4, 2009 pendente lite motion for modification that applies retroactively from February 4, 2009, until the date of judgment, which is affirmed, and the case is remanded for further proceedings in accordance with this opinion." Id., 58.

## B

## Present Appeal

### 1

### Trial Court's Memorandum of Decision on Remand

The court heard the present matter on remand over five days between October 2 and October 19, 2012, and it filed its memorandum of decision on December 13, 2012. It found in relevant part: "The plaintiff's employment has been, and continues to be, in computer research relating to genealogical study. He had worked for various companies over the years, but has been self-employed since March, 2003, when he started Mattatuck Consulting, LLC. It was his testimony that his last job prior to that date was severely hampered by his inability to be able to relocate to Utah to please his employer. Additional job opportunities required him to relocate as well. Those were not pursued. That was because, according to the plaintiff, the defendant refused to move out of Connecticut. She [did] not dispute the fact that she was not willing to relocate.

"His consulting business has been fairly successful, and his income has been a combination of consulting, writing and speaking engagements. In 2008, he authored a book titled 'Google Your Family Tree.' That publication enjoyed some success and boosted his income in that year and the next. He testified that the book is now four years old and in the technology field that is ancient. He claim[ed] almost no income from the book at [the time of the remand hearings] although he did admit in cross-examination that the book was . . . used as a text in [a] course at Boston University, which resulted in some extra book sales, but that he received no direct or other compensation from the college for the use of the text. He also testified that Mattatuck Consulting, LLC, has no intrinsic value and, other than some computer equipment, it has virtually no assets. Over the years, his self-employment income has ranged from gross earnings of $73,500 with gross income of $37,800 in 2011, to gross earnings of $108,800 with gross income of $64,700 in 2010, and to gross earnings of $150,700 with gross income of $67,600 in 2009. For [2012], he claim[ed] a gross income of almost $45,000 through the end of September with gross earnings of almost $67,600.

"The defendant was unemployed at the time of the trial, having been laid off in January of [2012], but she had been employed for most of the marriage. Her

employment has been for a variety of employers, all in the areas of business to business sales. The defendant's earnings ranged from $74,560 in 2009 to $57,800 in 2010, to $71,500 in 2011, and to unemployment [in 2012] in the amount of $525 per week."

The court refashioned the financial orders on remand in two stages. First, it crafted the orders in accordance with our directions in *Lynch I* and the facts as they were at the time of the dissolution. It then modified those orders in accordance with the motions for modification that it asked both parties to file during the remand hearings, in order to account for the changes in circumstances that had occurred since the time of the dissolution proceedings. The court undertook this approach pursuant to *Sunbury* v. *Sunbury*, 216 Conn. 673, 676–77, 583 A.2d 636 (1990), in which our Supreme Court held that a trial court must craft property distribution orders on remand in accordance with the facts as they existed at the time of the dissolution judgment, not at the time of the remand.

a

### Financial Orders on Remand

i

### Plaintiff's January 29, 2009 Motion for Contempt, Regarding Reimbursement for Shared Household Expenses

The court first addressed the plaintiff's January 29, 2009 motion for contempt, which the dissolution court had failed to do. The plaintiff withdrew the motion on October 1, 2012, because he believed that the remand hearings would subsume the arguments and evidence relevant thereto, but he also stated on the face of his withdrawal that he "[did] not in any way concede the contents of the motion." The court concluded on the basis of the evidence that it was difficult to determine if the defendant owed anything to the plaintiff for the period of time covered by the motion for contempt, and to the extent that certain evidence indicated that there was an arrearage, such arrearage was "de minimis," which prompted the court to state that it "decline[d] to rule further on the issue."

ii

### Defendant's February 4, 2009 Motion for Modification, Regarding Division of Shared Household Expenses

The court then considered the defendant's February 4, 2009 motion for modification and found that it had not been remanded, and therefore, the order remained in full force and effect, retroactive to February 4, 2009. The plaintiff has not directly challenged this finding in any of his nine claims on appeal.[6]

iii

### Alimony and Attorney's Fees Awards to Defendant

and Factual Findings Relevant Thereto

The court next found in relevant part with respect to the time of the dissolution judgment that "[n]either party bore a greater degree of fault for [the marital] breakdown than the other . . . ." (Citation omitted.) "In September, 2009, the plaintiff was self-employed and had a gross weekly income of approximately $1300. The defendant was employed with a gross weekly income at that time of a little over $1400.[7] The parties are the joint owners of a single-family home located [in Trumbull]. The home had a value as listed on the defendant's financial affidavit of $560,000 with a total outstanding mortgage of $210,533 for an estimated equity of $349,467. At the time of the dissolution, the plaintiff had retirement accounts of approximately $114,000, the majority of which was accumulated during the time of the marriage. The defendant had deferred income assets valued at $13,600, which [are] also a marital asset. Both parties have had medical issues in the past. Currently, as well as in 2009, neither has issues that would prevent them from being employed to their fullest capacity." (Footnotes altered.) The court subsequently ordered the plaintiff to pay to the defendant, inter alia, (1) periodic alimony of $100 per week until the death of either party or September 14, 2019, whichever occurred first, and (2) appellate attorney's fees of $7500.

b

Parties' Motions for Modification

The court then addressed both parties' motions for modification: "The defendant filed her motion . . . on October 11, 2012. In said motion, she alleged that although both parties were residing together with the children at the time of the dissolution, that changed when she obtained exclusive possession of the home in 2010. Furthermore, one of the minor children has attained majority and now attends college. Additionally, the defendant is currently unemployed and is paying for her medical insurance and that of her children through COBRA.[8]

"The plaintiff filed his motion . . . also on October 11, 2012. He claims significant changes as well, including his loss of medical insurance coverage once the dissolution was finalized. He points to the fact that he was forced to vacate the marital home on May 18, 2010, incurring housing costs of his own as well as being obligated to contribute to the living expenses of the children and the defendant. He also claims that the recent legislation passed in Connecticut that obligates out-of-state Internet retailers to collect Connecticut sales tax in instances where they pay commissions to their independent contractors or other representatives who reside and do business in the state has had a direct and negative impact on his income. Although there may have been some immediate reduction, his reported

income does not support this claim in the long term." (Citation omitted; footnotes altered.) Among the orders that the plaintiff requested in his motion for modification were (1) that the defendant pay alimony to him, retroactive to September 14, 2009; (2) that the defendant reimburse him for all alimony and child support payments, retroactive to September 14, 2009; and (3) that the parties equally share the mortgage and utility payments from September 14, 2009, to May 18, 2010, and equally share the mortgage payments and his rent payments thereafter.

The court concluded: "In the present case, both parties have easily met their respective burdens of showing a substantial change in circumstances." It thus entered several modified financial orders, three of which are relevant to this appeal.

i

Alimony Arrearage Owed to Plaintiff by Defendant

The first modified order that is a subject of this appeal is the court's determination that the plaintiff had overpaid his alimony obligation because he had paid $26,215 in accordance with the original order of $200 per week, even though the order on remand of $100 per week provided that he owed a total of $17,000 through December 15, 2012. The court did not finalize the amount of the overpayment at the time that it filed the decision, however, and instead ordered the parties to have a tax professional determine the amount in light of the tax consequences of the alimony payments to both parties and to file the tax professional's report with the court. After the parties complied with this order, the court filed a supplemental memorandum of decision on February 7, 2013, in which it stated: "The alimony overpayment of $9215 found by the court . . . is reduced to $7832 in consideration of the tax consequences to both parties."

ii

Reimbursement for Shared Household Expenses
Owed to Plaintiff by Defendant

The second modified order that is a subject of this appeal is the court's determination that the defendant owed a reimbursement to the plaintiff for payments made pursuant to the 2008 stipulation during the period of time between September 14, 2009, and the beginning of the remand hearings. It noted that it was not persuaded by the plaintiff's position that his housing costs and medical insurance costs were joint household expenses covered by the stipulation. It added, however, that it was persuaded that the plaintiff had paid $54,524.26 in mortgage and utility payments for the benefit of the defendant and for which he was entitled to reimbursement.[9] The court offset this amount by the amount owed to the defendant by the plaintiff, which the court fashioned by adding the amount conceded by

the plaintiff—$59,144—and the amount claimed by the defendant—$65,000—and then dividing the sum in half. The "compromise figure" found by the court equaled $31,306, and when the court subtracted it from the amount owed by the defendant to the plaintiff for mortgage and utility payments, it calculated a difference of $23,488.26, which it ordered as the amount that the defendant owed to the plaintiff for "overpayment of shared expenses prior to the start of the current trial . . . ." (Citation omitted.)

### iii

Defendant's October 11, 2012 Motion for Contempt, Regarding Plaintiff's Failure to Pay Alimony and Child Support Obligations Under Original Orders

The third modified order that is a subject of this appeal is the court's consideration of a motion for contempt filed by the defendant on October 11, 2012, in which she alleged that the plaintiff had stopped paying his alimony obligation of $200 per week and his child support obligation of $135 per week, even though the appeal of the orders did not stay them, per Practice Book § 61-11 (b). In his objection to the motion, the plaintiff argued that this court's reversal of the alimony and child support orders terminated his obligation to pay them. The court found that the plaintiff "admit[ted] that he stopped making the payments and offered no real reason for that decision. Ironically, he paid the obligation for almost all of the time his appeal was pending, as is required by § 61-11 (b) of the Practice Book and only stopped some thirteen weeks before the order was vacated and remanded for a new hearing." The court therefore granted the motion and ordered that the plaintiff pay $4355 to the defendant, representing $2600 ($200 x 13 weeks) in unpaid alimony and $1755 ($135 x 13 weeks) in unpaid child support.

### c

Plaintiff's Appeal of Trial Court's Judgment Rendered After Filing of Memorandum of Decision

The plaintiff on December 31, 2012, filed a motion for clarification of the memorandum of decision and a motion for reargument and reconsideration on January 2, 2013. The court entered an order on January 3, 2013, that addressed the plaintiff's requests for clarification, and denied his motion for reargument and reconsideration on the ground that "within the mosaic of its orders it reviewed and considered all claims and evidence presented. The decision reflects the court's determination of what comprised an equitable division of the assets and liabilities of the parties." The plaintiff subsequently filed his appeal on February 14, 2013, from the judgment rendered in the December 13, 2012 memorandum of decision and filed an amended appeal on February 28, 2013, after the court issued a supplemental memoran-

dum of decision on February 7, 2013.

Relevant Motions Filed Before and After Trial Court's
December 13, 2012 Memorandum of Decision

The following motions filed before and after the court's December 13, 2012 memorandum of decision are also subjects of this appeal. On April 27, 2012, the plaintiff filed a motion for exclusive possession of the marital home. The court, *Wolven, J.*, entered an order on June 28, 2012, and ruled with respect to this motion: "No action will be taken on this motion. This motion was previously argued on [January 13, 2011] and denied. The decision was appealed by the plaintiff and untouched by the Appellate Court. Moreover, the issue of the marital property will be fully relitigated in Middletown on the retrial of the financial matters in this case scheduled for October 1-5, 2012. Therefore the hearing scheduled for July 5, 2012 will not go forward." The plaintiff filed a motion to reargue and reconsider this order on July 6, 2012, and the court denied it on July 30, 2012. The plaintiff then filed a notice of intent to appeal on August 14, 2012.

On March 26, 2013, the plaintiff filed an emergency postjudgment motion for order in which he requested that the court order the defendant to transfer certain funds and assume certain mortgage payment obligations in response to the issuance of a default and foreclosure notice regarding the marital home. The docket indicates that the court, *Adelman, J.*, denied the motion on April 1, 2013, and the transcript for the hearing held on that date indicates that the ground for the court's ruling was that the motion was moot.

On April 12, 2013, the plaintiff filed a request in which he asked the court (1) to consider on the papers two motions that he filed on February 14, 2013, and (2) to issue a discretionary stay of the December 13, 2012 financial orders in the event that it decided to hold a hearing before it decided the two motions. The first February 14, 2013 motion was a request for a stay of the plaintiff's alimony and support obligations during the pendency of this appeal. The second February 14, 2013 motion was a postjudgment motion for order requesting, inter alia, that the court offset the plaintiff's weekly $100 alimony obligation by an equal weekly amount corresponding to the overpayments and reimbursements found by the court. The plaintiff acknowledged that the court had rescheduled the hearing for the two motions several times in order to accommodate both parties. The court entered an order on May 1, 2013, in which it denied both February 14, 2013 motions and declined to take action on the April 12, 2013 motion, which it deemed moot. The plaintiff on May 20, 2013, filed an amended appeal challenging the May 1, 2013 order.

Finally, on May 1, 2013, the defendant filed a motion for contempt alleging that the plaintiff had not complied with his obligation under the December 13, 2012 memorandum of decision to pay $100 per week in periodic alimony. The plaintiff on May 20, 2013, then filed a motion for modification and a motion to stay the execution of the judgment on the motion for contempt. On that date,[10] the court entered an order in which it (1) found the plaintiff in contempt, (2) suspended his alimony obligation from the week of May 26, 2013, to the week of June 24, 2013; (3) determined that the suspended alimony payments would accrue and be added to the alimony arrearage of $2100 after June 24, 2013, for a total alimony arrearage of $2500; and (4) transferred the matter from the regional family trial docket in Middletown back to the judicial district of Fairfield for resolution of the plaintiff's motion for modification[11] and all future motions. The plaintiff on June 7, 2013, filed an amended appeal challenging the May 20, 2013 order and the court's failure to decide his motion for modification at the same time as the defendant's motion for contempt. Additional facts and procedural history will be set forth as necessary.

II

LEGAL STANDARDS

A

Standard of Review

"In fashioning its financial orders [in a domestic relations matter], the court has broad discretion, and [j]udicial review of a trial court's exercise of [this] broad discretion . . . is limited to the questions of whether the . . . court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action. . . . That standard of review reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties. . . . We likewise note that [a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Schoenborn* v. *Schoenborn*, 144 Conn. App. 846, 856–57,

74 A.3d 482 (2013).

B

Self-Represented Litigants

Although the plaintiff was represented by an attorney during the remand hearings, he was self-represented during several of the other trial court proceedings at issue, including the motions discussed in part I B 2 of this opinion, and currently is self-represented in this appeal. "[I]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005).

III

PLAINTIFF'S CLAIMS

Again, we note that the plaintiff claims that the court improperly (1) awarded alimony to the defendant and not to him; (2) denied his request for equitable financial relief in his motion for modification, even though he had met his burden of establishing a substantial change in circumstances; (3) granted the defendant's October 11, 2012 motion for contempt; (4) granted the defendant's May 1, 2013 postjudgment motion for contempt; (5) calculated the reimbursement for stipulated shared household expenses owed to him by the defendant; (6) failed to calculate a pendente lite arrearage owed to him by the defendant; (7) awarded $7500 in appellate attorney's fees to the defendant; (8) entered financial orders that were inequitable to him and that demonstrated the court's bias against him; and (9) failed to hear certain of his motions and denied others without consideration of his due process rights. We now address each of the plaintiff's claims in turn.

A

Claim One: Award of Alimony from
Plaintiff to Defendant

The plaintiff first claims that the court abused its discretion in ordering him to pay alimony to the defendant and in not ordering the defendant to pay alimony to him because the evidence demonstrated that she had a higher level of income, a lower level of debt, and better employment prospects at all times relevant to the present matter. We are not persuaded. We address only the alimony orders pertaining to the time of the dissolution judgment in resolving this claim because we address the alimony orders pertaining to the time after the dissolution judgment in resolving the plaintiff's

claim regarding his motion for modification, which overlaps with this claim. See part III B of this opinion.

"We begin our analysis by noting that . . . the purpose of alimony [is] the obligation of support that spouses assume toward each other by virtue of the marriage. . . . This court has stated that [a]limony is always represented by money and is damages to compensate for loss of marital support and maintenance. . . . In other words, alimony represents the court's finding, measured in dollars, of the financial needs of the receiving spouse at the time of the dissolution. . . .

"[General Statutes §] 46b-82[12] governs awards of alimony. That section requires the trial court to consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties. . . . In awarding alimony, [t]he court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." (Citation omitted; footnote added; internal quotation marks omitted.) *Wiegand* v. *Wiegand*, 129 Conn. App. 526, 535–36, 21 A.3d 489 (2011).

The present matter is similar to *Gamble-Perugini* v. *Perugini*, 112 Conn. App. 231, 237, 962 A.2d 192, cert. denied, 291 Conn. 915, 970 A.2d 727 (2009), in which this court affirmed a periodic alimony award to the plaintiff wife of $100 per week for ten years, even though the defendant husband argued that she would earn significant income from her work as a real estate agent and from the rental properties that she received in the distribution of the marital assets. The trial court found: "The plaintiff earned $37,594 in 2006 and $14,700 in 2005 in real estate commissions. Although the defendant had not . . . filed his 2006 tax return [at the time of trial], he reported an income of $67,025 for 2005." Id., 233. It also found that the share of the rental properties allocated to the plaintiff had a fair market value of $2,057,061. Id., 236. This court concluded: "Although there is evidentiary support for the defendant's claim that the plaintiff received properties from which she will earn rental income and that she also works as a real estate agent, testimony regarding the parties' marriage also revealed that, for most of the years the parties were together, the plaintiff was the primary caretaker for the children and that her earnings from employment were modest." Id., 237.

In the present matter, even though the court found that "[b]oth parties had an average [weekly] gross income in the $1300 to $1400 range" at the time of the dissolution judgment, it also found that "[t]he plaintiff, having been employed for a longer period of time during the marriage while the defendant was a fulltime mother,

had a much larger amount of deferred income assets as of the original trial." (Citation omitted.) The evidence established that the defendant did not have fulltime paid employment from 1993 to 2004. It also established that, at the time of the dissolution judgment, the plaintiff had $114,000 in his retirement accounts while the defendant had $13,600 in deferred income assets. The court labeled both as marital assets but did not subject these assets to division or redistribution in fashioning the financial orders on remand in express accordance with, inter alia, § 46b-81, which governs property distribution awards in dissolution actions, and § 46b-82. As this court concluded in *Gamble-Perugini*, "[u]nder all the circumstances presented to" us in this matter, we conclude that the trial court's "order for the payment of durational alimony was not an abuse of discretion." *Gamble-Perugini* v. *Perugini*, supra, 112 Conn. App. 237.

We also conclude that the court did not abuse its discretion in declining to award alimony to the plaintiff at the time of the dissolution judgment.[13] The circumstances presented to the court do not rise to the level of those that have prompted this court to label a failure to award alimony as an abuse of discretion. For example, in *Kovalsick* v. *Kovalsick*, 125 Conn. App. 265, 270–75, 7 A.3d 924 (2010), this court held that the trial court abused its discretion in failing to award time limited alimony to the plaintiff wife where (1) her historical income never exceeded $25,000, while the defendant husband's historical income was approximately $125,000 per year; (2) there was no evidence that she could increase her earning capacity without additional education; and (3) "there was evidence that the plaintiff was not able to meet her obligations"; id., 274; warranting the conclusion that "[i]t [was] reasonably foreseeable that, if the court's financial orders [were] allowed to stand and the plaintiff continue[d] to be responsible for the entire debt but [was] unable either to increase her earning capacity or receive alimony or a portion of the marital property, she could well be in dire financial straits." Id., 274–75.

This court likewise held in *Wiegand* v. *Wiegand*, supra, 129 Conn. App. 539, that the trial court abused its discretion in failing to award some form of alimony to the plaintiff husband where, "[o]n the date of the dissolution hearing, the plaintiff had little or no income, while the defendant had a net income of approximately $889 weekly. The plaintiff was ordered to assume and to pay a substantial portion of the marital debt, despite having little or no income to pay that debt, and the court did not make any findings regarding his prospects for employment or his earning capacity. Because the parties did not have substantial personal assets, it reasonably is foreseeable that if the plaintiff complied with the court's orders, he quickly would become destitute, to the extent that he was not already destitute."

The court in the present matter found that the plaintiff's "consulting business has been fairly successful" and that his book, published in 2008, "enjoyed some success and boosted his income in that year and the next." It did not find that there was any significant disparity between the plaintiff's income and the defendant's income at the time of the dissolution judgment. It awarded no child support, and it ordered the parties to share the minor children's expenses equally and the household expenses in the 60/40 percent ratio provided by the modified stipulation. It further ordered that the parties retain both their respective assets and liabilities, with the exception of the balances on the defendant's American Express and Chase credit cards. The court ordered that the parties jointly pay these balances with their respective net proceeds from the sale of the marital home. Given the court's findings regarding the plaintiff's career and income, and its orders regarding child support and the division of assets and liabilities, we are unable to conclude that the present matter is analogous to *Kovalsick* and *Wiegand*, and that the court abused its discretion in awarding alimony to the defendant at the time of the dissolution judgment and not awarding the same to the plaintiff. We therefore reject the plaintiff's claim.

## B

### Claim Two: Plaintiff's October 11, 2012 Motion for Modification

The plaintiff next claims that the court abused its discretion because it failed to grant him equitable financial relief in accordance with his requests in his October 11, 2012 motion for modification, even though it determined that "both parties have easily met their respective burdens of showing a substantial change in circumstances." We are not persuaded.

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a),[14] which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . .

"Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an

appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Citations omitted; footnote altered; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–72, 81 A.3d 215 (2013).

Regarding the motions for modification filed by both parties, the court found the following substantial changes in circumstances that are relevant to this claim. After "the original trial, [the defendant's] income . . . fluctuated from a low of less than $58,000 in 2010 to a high of over $82,000 in 2011, not including her . . . unemployment [in 2012]." The plaintiff's "income . . . decreased somewhat over the years with the aging of his book and the resulting lower sales." Specifically, "[t]he evidence presented [was] that his gross income for 2011 was under $38,000 and that his income [as of October, 2012, was] projected to be approximately $60,000 . . . ." The court was not persuaded by the plaintiff's argument that the 2011 amendment to General Statutes § 12-407,[15] which "obligates out-of-state Internet retailers to collect Connecticut sales tax in instances where they pay commissions to their independent contractors or other representatives who reside and do business in the state . . . had a direct and negative impact on his income." It found: "Although there may have been some immediate reduction, his reported income does not support this claim in the long term."

Furthermore, the plaintiff was ordered to vacate the marital home in December, 2009, but did not do so until May, 2010. The elder daughter did not participate in the shared custody arrangements after May, 2010, although the younger daughter did. In response to this change in circumstances, the court ordered the plaintiff to pay child support of $148 per week for the elder daughter, to account for the period of time between May, 2010, and when she reached the age of majority. See footnote 1 of this opinion.

The court additionally found that the plaintiff had overpaid (1) his alimony obligation, as described in part I B 1 b i of this opinion; (2) his obligation under the 2008 stipulation, as described in part I B 1 b ii of this opinion; and (3) his child support obligation in the amount of $11,967, given the reversal of the original order and the child support order on remand.

As previously noted in part I B 1 b of this opinion, the plaintiff requested in relevant part that the court modify the orders entered at the time of the dissolution judgment by ordering the defendant to (1) reimburse all of his alimony and child support payments, retroactive to September 14, 2009;[16] (2) pay him alimony, also retroactive to September 14, 2009; and (3) equally share the mortgage and utility payments for the marital home from September 14, 2009, to May 18, 2010, and the

mortgage payments and his rent payments thereafter. We begin our resolution of the claim by noting that the modified financial orders include reimbursements from the defendant to the plaintiff for his overpayment of child support, alimony, and stipulated shared household expenses, as well as for one half of a property insurance reimbursement check received by the defendant. These orders are contrary to the plaintiff's position that he received "no equitable financial relief . . . ."

We also are not persuaded by the plaintiff's position that we should analogize this matter to those matters in which our Supreme Court and this court have held alimony awards to be inequitable and therefore an abuse of discretion. See, e.g., *Greco* v. *Greco*, 275 Conn. 348, 361, 880 A.2d 872 (2005) (reversing, inter alia, alimony award of $710 per week where "[t]he defendant's annual salary of $73,840, reduced by $36,920 per year for alimony payments, $12,480 per year for life insurance premiums, $5972.16 per year for health insurance premiums, and $20,000 per year in attorney's fees, result[ed] in an annual gross income deficit of $1532.16 per year" and also observing that "[i]f the defendant's net income, which he reported to be $53,872 per year, is correct, the payment of alimony and insurance premiums alone leave the defendant with an annual net income deficit of $1500.16"); *Pellow* v. *Pellow*, 113 Conn. App. 122, 124, 128–30, 964 A.2d 1252 (2009) (periodic alimony award of $4500 per month, which totaled more than $70,000 per year, was abuse of discretion where it would consume more than 90 percent of obligor's gross income, which trial court found to be $78,796); *Cleary* v. *Cleary*, 103 Conn. App. 798, 803–807, 930 A.2d 811 (2007) (reversing alimony award of $1000 per week where evidence provided that defendant's income consisted of $109 per week in disability; $38,098 listed on joint income tax return as "other income" attributed to gambling winnings, subject to $28,100 attributed to receipted gambling losses; pension benefits of $173,000 and retirement benefits of $1700 per week, half of which court awarded to plaintiff; other assets deemed "relatively insignificant" by court; and potential consulting work, specifics of which, numerical or otherwise, were not established with evidence).

We note the plaintiff's allegations of financial hardship in his arguments and briefs to this court.[17] Nonetheless, our review of the court's modified financial orders "is limited to determining (1) whether the . . . court correctly applied the law and (2) whether the . . . court could reasonably have concluded as it did. . . . This court may not substitute its own opinion for the factual findings of the trial court." (Internal quotation marks omitted.) *Panganiban* v. *Panganiban*, 54 Conn. App. 634, 642, 736 A.2d 190, cert. denied, 251 Conn. 920, 742 A.2d 359 (1999). We further note the principle that " 'inability to pay' does not automatically entitle a party to a decrease of an alimony order. It must be excusable

and not brought about by the [obligor's] own fault." *Sanchione* v. *Sanchione*, 173 Conn. 397, 407, 378 A.2d 522 (1977); see also *Gleason* v. *Gleason*, 16 Conn. App. 134, 137, 546 A.2d 966 (1988); cf. *Berry* v. *Berry*, 88 Conn. App. 674, 685, 870 A.2d 1161 (2005) ("loss of employment does not warrant alimony modification unless the moving party also proves that her earning capacity has changed substantially"). We do not note this principle for the purpose of addressing the issue of fault, which is not before us. Instead, we note it for the purpose of demonstrating that a trial court tasked with modifying a financial order in a domestic relations matter must consider any allegation of financial hardship in the context of the facts before it and the criteria set forth in § 46b-82. See, e.g., *O'Donnell* v. *Bozzuti*, 148 Conn. App. 80, 87–88, 84 A.3d 479 (2014).

The court in the present matter modified the financial orders in response to not only the substantial change in the plaintiff's circumstances but also the substantial change in the defendant's circumstances, most prominent of which was her loss of employment at the beginning of 2012. Furthermore, during the three years between the dissolution judgment and the remand hearings, the court found that the plaintiff had earned more income in 2010 and 2012, while the defendant had earned more income in 2009 and 2011. See part I B 1 of this opinion. These findings prompted the court to make the additional finding that "the earning capacities of the parties are remarkably close." Given these findings, along with the court's findings pertaining to both parties' overall living situations between 2009 and 2012, its orders that the defendant reimburse the plaintiff for overpayments, and our careful review of the record, we are unable to conclude that the court abused its discretion by failing to modify the alimony orders in the manner requested by the plaintiff. We also determine, for the reasons more fully stated in part III D of this opinion, that the court did not abuse its discretion in modifying the financial orders with respect to the parties' obligations for shared household expenses under the 2008 stipulation. We accordingly reject the plaintiff's claim.

C

Claim Three: Defendant's October 11, 2012
Motion for Contempt

Claim Four: Defendant's May 1, 2013
Motion for Contempt

We next address the plaintiff's two claims regarding motions for contempt filed by the defendant and granted by the court because they are governed by the same legal principles. The plaintiff claims that the court improperly granted the defendant's October 11, 2012 motion for contempt regarding his nonpayment of alimony and child support under the original financial

orders because this court vacated those orders in *Lynch I* on April 24, 2012, and the trial court could not have found simultaneously that he owed alimony and child support payments to the defendant and that the defendant owed reimbursements to him for alimony and child support overpayments. The plaintiff also claims that the court improperly granted the defendant's May 1, 2013 motion for contempt regarding his nonpayment of alimony under the financial orders fashioned on remand because General Statutes § 46b-8 required the court to hear his concurrently filed motion for modification at the same time, and again, the court could not have found that he owed alimony to the defendant where it previously had found that the defendant owed a reimbursement to him for alimony overpayments. We are not persuaded by either claim.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Tow* v. *Tow*, 142 Conn. App. 45, 48, 64 A.3d 128 (2013).

We begin our analysis by rejecting the plaintiff's argument that the court could not reasonably have found him in contempt of his support obligations under the original financial orders on October 11, 2012, and the modified financial orders on May 1, 2013, because it also had found that the defendant owed a reimbursement to him for support overpayments. The essence of the plaintiff's argument is that he was entitled to offset his accrued obligations under both series of court orders by his overpayments. This court has rejected that position, however, in *McRae* v. *McRae*, 139 Conn. App. 75, 86, 54 A.3d 1049 (2012): "Retroactive modifications of support orders are ordinarily impermissible. . . . With the exception of the period following service of a motion for modification, [n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification . . . . The power of the trial court to modify orders of support and alimony is . . . a creature of statute. General Statutes § 46b-86. Nothing in our statute regarding modification of alimony and support can be construed as authorizing retroactive modification. Such a construction has been expressly disavowed by our Supreme Court. . . . Simply stated, *alimony already accrued may not be modified.*" (Citations omitted; emphasis added; internal quotation marks omitted.) If the court had denied the motions for contempt on the ground that the plaintiff could offset the past due amounts that he owed by the

amounts that he overpaid, it would have subjected the operative court orders to retroactive modification in violation of § 46b-86 (a) and *McRae*.[18]

### 1

### October 11, 2012 Motion for Contempt

We now address each of the claims in turn. With respect to the October 11, 2012 motion for contempt— see part I B 1 b iii of this opinion—the plaintiff does not challenge the finding that he failed to make alimony and child support payments under the original financial orders from the week of January 23, 2012, to the week of April 16, 2012. His own alimony and child support payment detail submitted during the remand hearings documents that he made only three alimony and child support payments under the original financial orders in 2012, during the first three weeks of January. Furthermore, his challenge to the finding of wilful contempt is limited to his argument that he could offset his unpaid support obligations by his overpayments of past support obligations, which we reject for the aforementioned reasons. The plaintiff instead argues that the court improperly granted the motion because the motion postdated *Lynch I* by approximately six months and therefore sought to enforce vacated orders.

We reject the plaintiff's position that he had no obligation from the week of January 23 to the week of April 16, 2012, to pay alimony and child support under court orders that this court vacated on April 24, 2012, simply because the defendant sought to hold him in contempt of those orders after that date. The date when the defendant filed her motion for contempt had no bearing on his obligations under the original financial orders, for " 'the rule [is] that [a]n order of the court must be obeyed until it has been modified or successfully challenged.' . . . *Sablosky* v. *Sablosky*, 258 Conn. 713, 719, 784 A.2d 890 (2001). Indeed, this court and our Supreme Court previously have determined that a party's decision to use self-help instead of judicial resources to modify an obligation under a judgment in a family matter could be a basis for granting a motion for contempt against that party . . . . Id., 720 . . . accord *Eldridge* v. *Eldridge*, 244 Conn. 523, 529–32, 710 A.2d 757 (1998) (plaintiff stopped paying alimony and child support after he learned defendant had not told him that she had been earning more than $25,000 per year for seven years, because plaintiff believed he had overpaid under agreement provision with formula by which plaintiff could reduce such payments when defendant earned at least $25,000 per year); *Behrns* v. *Behrns*, 80 Conn. App. 286, 288–92, 835 A.2d 68 (2003) (defendant stopped paying alimony and child support under belief that his lack of employment allowed him to do so, pursuant to mathematical formula in agreement that provided for adjustments of such payments in accordance with changes in cost of living as measured by consumer price

index or his salary and wages), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004)." (Citation omitted.) *McKeon* v. *Lennon*, 147 Conn. App. 366, 377–78, 83 A.3d 639 (2013).

## 2

### May 1, 2013 Motion for Contempt

We likewise are not persuaded by the plaintiff's claim with respect to the May 1, 2013 motion for contempt. See part I B 2 of this opinion. Again, the plaintiff has not challenged the finding that he failed to make alimony payments under the modified financial orders from December 13, 2012, to May 1, 2013. He has challenged the court's finding of wilful contempt during the May 20, 2013 hearing held on the motion, but as we note in footnote 9 of this opinion, he has not submitted a transcript or any other documentation of the hearing, and we therefore are unable to consider this challenge any further.

The plaintiff largely bases his claim on what he perceives as the court's noncompliance with General Statutes § 46b-8,[19] which provided that "[w]henever a motion for modification of an order for support and alimony is made to the superior court by a moving party against whom a motion for contempt for noncompliance with such order is pending, the court shall accept such motion and hear both motions concurrently." The plaintiff argues that the court abused its discretion because it did not hear the defendant's May 1, 2013 motion for contempt and his May 20, 2013 motion for modification at the same time, even though § 46b-8 required it to do so. The plaintiff's statutory interpretation ignores our Supreme Court's determination in *Bryant* v. *Bryant*, 228 Conn. 630, 637 A.2d 1111 (1994), that the statute "merely [sets] forth a procedure whereby the trial court [could] consider a motion for modification jointly with a motion for contempt when doing so would [have been] in the interests of the orderly and efficient resolution of the two motions"; id., 639; and that it was "not persuaded that the legislature intended to require a joint hearing." Id., 640. We accordingly reject the plaintiff's claim, which is governed and resolved by this statutory interpretation.

## D

### Claim Five: Calculation of Reimbursement Owed to Plaintiff by Defendant

### Claim Six: Calculation of Pendente Lite Arrearage Owed to Plaintiff by Defendant

We consider these claims together because they both challenge the court's factual findings. First, the plaintiff claims that the court clearly erred in calculating the amount of the reimbursement owed to him by the defendant, which he argues was too low due to how the court credited her for her payments of certain types of

expenses without also crediting him for his payments of these types of expenses. The plaintiff further claims that the court clearly erred in finding that there was no pendente lite arrearage owed under the 2008 stipulation for the period of time covered by his January 29, 2009 motion for contempt because the defendant had conceded the arrearage, and this court in *Lynch I* had ordered its calculation and incorporation into the financial orders on remand. We are not persuaded by either claim.

We again note that "[i]t is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [W]here the factual basis of the court's decision is challenged, we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, these facts are clearly erroneous." (Internal quotation marks omitted.) *Guarascio* v. *Guarascio*, 105 Conn. App. 418, 421, 937 A.2d 1267 (2008).

1

### Calculation of Reimbursement for Payments of Shared Stipulated Household Expenses

We first resolve the plaintiff's claim regarding the calculation of the reimbursement owed to him for his payment of stipulated shared household expenses. See part I B 1 b ii of this opinion. The plaintiff does not claim that the calculation lacked evidentiary support or that the court misunderstood the evidence on which it relied in making the calculation. The plaintiff further does not challenge the "compromise figure" that the court found to represent the defendant's payment of shared expenses, which it subtracted from the amount that it found to represent his payment of shared expenses in order to arrive at the reimbursement that it ordered her to pay to him. As the court noted in its memorandum of decision, the plaintiff conceded in his proposed findings of fact and orders that the defendant "incurred at least $59,144 in what should be shared expenses . . . ." The plaintiff's claim instead is that the conceded amount representing the defendant's payment of shared stipulated household expenses included payments for auto insurance premiums, the children's expenses, and the children's unreimbursed medical expenses, but the amount representing his payment of stipulated shared household expenses improperly failed to include his payments for these categories of expenses, which led to an erroneously low calculation of the reimbursement owed to him. We are not persuaded. The plaintiff's claim asks us to reexamine and reweigh the evidence, which this court is prohibited from doing, for "[t]he trier of facts [is] free to accept or reject any portion of the evidence of either party." *Kinney* v. *Kinney*, 5 Conn. App. 484, 486, 500 A.2d 569 (1985), cert. denied, 199 Conn. 804, 506 A.2d 146, cert.

denied, 479 U.S. 818, 107 S. Ct. 78, 93 L. Ed. 2d 33 (1986). There is nothing in the plaintiff's claim or the record that would warrant a deviation from this well established principle in this matter.

Furthermore, in making this claim, the plaintiff directs our attention to his January 2, 2013 motion to reargue and reconsider, which contains a detailed alternative calculation that was based on evidence that was before the court during the remand hearings. The court denied the motion, which the plaintiff now argues was an abuse of discretion. We disagree. "The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . [T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Citations omitted; internal quotation marks omitted.) *Liberti* v. *Liberti*, 132 Conn. App. 869, 874, 37 A.3d 166 (2012). The plaintiff's motion did not ask the court to consider an overlooked legal authority or claim or to reconsider a misapprehended fact. It instead asked the court to reevaluate the facts that had been before it during the remand hearings in order to recalculate the reimbursement owed to the plaintiff in a higher amount. This is a clear example of an attempt to have the proverbial " 'second bite of the apple' "; id.; and we reject it, as we reject this claim.

2

Calculation of Pendente Lite Arrearage

We similarly are not persuaded by the plaintiff's claim that the court clearly erred in failing to find a pendente lite arrearage owed to him by the defendant for his payments of stipulated shared household expenses from December 11, 2008, to September 14, 2009. See part I B 1 a i of this opinion. This court's order in *Lynch I* regarding the pendente lite arrearage was premised on the plaintiff's entitlement to the arrearage, which this court treated as an undisputed fact due to the defendant's concession during the dissolution proceedings. *Lynch* v. *Lynch*, supra, 135 Conn. App. 49–51. During the remand hearings, the parties presented the court with evidence in which they documented their respective payments of stipulated shared household expenses from December 11, 2008, to September 14, 2009. Of particular note are the plaintiff's multipage summary of the claimed pendente lite arrearage, the plaintiff's schedule of the defendant's partial reimbursement payments during the pendente lite period, and the defendant's list of payments made for stipulated shared household expenses during the pendente lite period.

We have reviewed this evidence and the parties' testimony during the remand hearings, and we conclude that the court did not clearly err in finding that "[t]he evidence was not convincing that money was owed in either direction." We note, as did the plaintiff, the court's inconsistent disposition of the issue—first "declin[ing] to rule further on" it and then denying the underlying motion for contempt—and its reference to a "de minimis amount" that could be owed to the plaintiff if the evidence were construed in a certain way, and we agree with the plaintiff that they are problematic, insofar that they were perhaps inartful. Nonetheless, they do not necessitate a conclusion on our part that the court clearly erred and violated this court's order in *Lynch I.* Accordingly, we reject the plaintiff's claim.

E

### Claim Seven: Award of Attorney's Fees from Plaintiff to Defendant

The plaintiff claims that the court erred because it awarded $7500 in appellate attorney's fees to the defendant when refashioning the financial orders on remand, even though the record does not support the conclusion that she lacked sufficient liquid assets to pay the fees or that a failure to award such fees would undermine the other financial orders. We are not persuaded.

"When making an order for the payment of attorney's fees, the court must consider factors that are essentially the same as those that must be considered when awarding alimony. . . . [General Statutes §] 46b-62 governs the award of attorney's fees in dissolution proceedings and provides that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82." (Citation omitted; internal quotation marks omitted.) *Pacchiana* v. *McAree*, 94 Conn. App. 61, 70, 891 A.2d 86, cert. denied, 278 Conn. 922, 901 A.2d 1221 (2006). "This reasonableness requirement balances the needs of the obligee spouse with the obligor spouse's right to be protected from excessive fee awards." (Internal quotation marks omitted.) *Panganiban* v. *Panganiban*, supra, 54 Conn. App. 644.

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion.

. . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) *Pacchiana* v. *McAree*, supra, 94 Conn. App. 70–71.

The court's order that the plaintiff pay appellate attorney's fees to the defendant was one of the financial orders that the court refashioned on remand in accordance with the facts as they were at the time of the dissolution judgment. Our determination that the alimony award was not an abuse of discretion therefore prompts us to reach the same conclusion regarding the appellate attorney's fees award. Furthermore, we also are not persuaded by the plaintiff's argument that the award was improper for the additional reason that the defendant did not submit any evidence or proposed finding of fact or order in support of the award. Among the defendant's proposed orders was that the plaintiff "be responsible for [her] legal fees . . . in the total amount of $26,000 pursuant to the [a]ffidavit filed by counsel," which she also filed with the court. For the foregoing reasons, we deem the award of appellate attorney's fees to the defendant to have been a proper exercise of the court's discretion and supported by the evidence, and we reject the plaintiff's claim.

F

Claim Eight: Judicial Bias

The plaintiff labels this claim as one that "[t]he . . . court erred in its overall orders which are inequitable, unjust, discriminatory, and punitive toward" him, but a reasonable interpretation of his briefs leads to the conclusion that the plaintiff's claim is one of judicial bias. Furthermore, both parties characterized this claim in this fashion during oral argument before this court. We note, as the defendant did during oral argument before this court, that this appeal is the first time that the plaintiff has made this claim. The plaintiff has not challenged this assertion, and our review of the record demonstrates that he did not "preserve his claim of judicial bias in accordance with Practice Book § 1-23" by moving to disqualify Judge Adelman at any time during the trial court proceedings. *Wiegand* v. *Wiegand*, supra, 129 Conn. App. 533. "Nevertheless, because claims of judicial bias strike at the very core of judicial integrity and implicate the basic concepts of a fair trial, we will review the plaintiff's claim." Id.

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct. . . . A judge should be scrupulous to refrain

from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. . . . A judge, trying the cause without a jury, should be careful to refrain from any statement or attitude which would tend to deny [a party] a fair trial. . . . It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, 149 Conn. App. 283, 296, 88 A.3d 589, cert. granted on other grounds, 312 Conn. 920, 94 A.3d 1201 (2014).

The plaintiff makes the broad, sweeping argument that "the record demonstrates bias" and that "[w]hile unknown if [the] bias is tied to [his] gender (awards traditionally paid by husband to wife), his previous grievance filings, his history as a pro se litigant, his pending malpractice counterclaim against former trial counsel, or some combination thereof, it is not reasonable to summarily dismiss these claims as mere coincidence." He supports this assertion of Judge Adelman's gender bias and bias against litigants for their past litigation conduct and self-represented status with equally broad, sweeping references to what he characterizes as the inequitable nature of the financial orders and to certain rulings, specifically, credibility determinations, that were favorable to the defendant. We already have rejected the plaintiff's characterization of the financial orders in parts III A and B of this opinion, in which we concluded that the court did not abuse its discretion in declining to award alimony to the plaintiff and reduce his alimony obligations to the defendant.

With respect to the plaintiff's reliance on credibility determinations and other court rulings that were favorable to the defendant, we note that "[a]dverse rulings themselves do not constitute evidence of bias. . . . Obviously, if a ruling against a party could be used as an indicia of bias, at least half of the time, every court would be guilty of being biased against one of two parties. Moreover, the fact that a trial court rules adversely to a litigant, even if some of these rulings were determined on appeal to have been erroneous, [still] does not demonstrate personal bias." (Internal quotation marks omitted.) *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 317, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010). As did this court in *Burns*, we conclude that "[t]he fact that the plaintiff strongly disagrees with the substance of the court's rulings does not make those rulings evidence of bias. In the present case, the plaintiff's argument of bias is completely unsubstantiated by the trial record."[20] Id. We thus reject the plaintiff's claim.

"Because the plaintiff's judicial misconduct claims are unsupported, we take the time to reiterate that [a]ny

claim of judicial bias is taken as an attack on the fairness of the judicial process. . . . [We] remind [litigants] once again that claims of judicial bias are serious matters that should not be raised for the mere purpose of seeking a reversal of a judgment." (Internal quotation marks omitted.) *Bennett* v. *Chenault*, 147 Conn. App. 198, 205, 81 A.3d 1184 (2013).

G

Claim Nine: Whether Court Erred in Failing to Hear
Certain of Plaintiff's Motions and Denying
Others without Consideration of
Plaintiff's Due Process Rights

Finally, the plaintiff claims that the court's failure to hold hearings and issue decisions for each of the motions discussed in part I B 2 of this opinion requires reversal. We are not persuaded.

We begin by noting that part of the plaintiff's claim is that the court declined to hear and decide the motions at issue without consideration of his due process rights. The plaintiff's due process argument consists of a handful of passing references to due process in his initial brief only: the caption of the claim; references to the fifth and fourteenth amendments to the United States constitution in the table of authorities cited; and a one sentence contention without analysis or supporting citations that the court's denial of his request to call the defendant as a witness during a motion hearing was "a violation of [his] procedural due process rights." "[A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 690, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). We accordingly will not address this part of the plaintiff's claim because he has abandoned it through inadequate briefing.

In making this claim, the plaintiff cites repeatedly to *Ahneman* v. *Ahneman*, 243 Conn. 471, 482, 706 A.2d 960 (1997), and *Ramin* v. *Ramin*, 281 Conn. 324, 330, 915 A.2d 790 (2007), for the proposition that a trial court abuses its discretion when it refuses to consider a party's motions in a dissolution matter. Those cases, however, are distinguishable. In both of those cases, the refusal by the trial court to consider the motions at issue was a wholesale refusal to address the motions in any fashion. In *Ahneman* v. *Ahneman*, supra, 475–76, the court refused on the record to consider any motions concerning financial issues filed by the defendant after her appeal of its decision to grant a motion for modification filed by the plaintiff. Similarly, in *Ramin* v. *Ramin*, supra, 332–36, the court held a hearing for a motion for contempt filed by the plaintiff, but it marked the motion as " 'off' "; id., 336; after expressing its frustration over

the duration of the matter, insisting that the matter proceed to trial as scheduled, and consequently refusing on the record to consider the motion further during the hearing.

Our recitation of the procedural history pertaining to the motions at issue in part I B 2 of this opinion demonstrates that the court not only considered but also decided all of these motions or the issues that they raised. The plaintiff nonetheless appears to argue that the court refused to consider these motions in violation of *Ahneman* and *Ramin* because it did not hold discrete hearings and issue discrete decisions for each of them in sufficiently expeditious fashion. We decline to adopt the plaintiff's position and label the court's actions with respect to the motions, each of which was heard and decided fully, as an abuse of its broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The elder daughter became eighteen years old in October, 2011, and the younger daughter became eighteen years old in July, 2014. We need not discuss the trial court orders pertaining to child support or custody because they have not been challenged on appeal in either *Lynch I* or the present appeal, except to the limited extent described in parts III B and C of this opinion.

[2] The docket lists the date for the judgment as September 15, 2009, but we will use the date of September 14, 2009, instead, given the use of that date on the judgment itself, by this court previously, and by both parties in the present appeal.

[3] "The defendant's motion referenced a paragraph of the stipulation . . . providing that the parties pay equally the following: '[M]ortgage including real estate taxes and homeowner's insurance, all children's expenses, all utilities, life, health and auto insurance premiums and groceries for the family. Each party shall pay their own auto expenses except for auto insurance. Parties must agree on children's expenses. No liquor or wine is to be included in the groceries.' " *Lynch* v. *Lynch*, supra, 135 Conn. App. 43 n.3.

[4] We were not provided with information concerning the current status of the marital home, e.g., whether it is still owned by the parties or whether it has been sold.

[5] We concluded that we "need not review the plaintiff's claims challenging the other financial orders rendered in the dissolution judgment based on our partial reversal of that judgment and our remand to the trial court for new financial orders." (Internal quotation marks omitted.) *Lynch* v. *Lynch*, supra, 135 Conn. App. 54 n.12.

[6] In outlining the facts and procedural history, the plaintiff states in a footnote: "The retroactive pendente lite modification should now be vacated as it necessarily impacts the issue of an outstanding pendente lite arrearage which was specifically addressed on remand orders by the Appellate Court in 2012." We previously have held that an "assertion, raised in a footnote in [an] appellate brief without substantive discussion or citation of authorities," is inadequately briefed for the purpose of appellate review. *Fort Trumbull Conservancy, LLC* v. *New London*, 135 Conn. App. 167, 175, 43 A.3d 679, cert. denied, 307 Conn. 905, 53 A.3d 220 (2012). The plaintiff's passing references to the motion in other parts of his initial brief also are insufficient to raise the issue for the purpose of appellate review, given that they, too, are unaccompanied by analysis or citations to relevant authority.

[7] Even though the court referred only to the parties' respective gross incomes throughout its memorandum of decision, it clarified in its January 3, 2013 order that it "used net income for all calculations as required." Cf. *Cleary* v. *Cleary*, 103 Conn. App. 798, 801, 930 A.2d 811 (2007) (trial court improperly entered alimony orders on basis of gross income rather than net income).

[8] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29

U.S.C. §§ 1161 through 1168.

[9] The court noted that these overpayments covered the entirety of the defendant's stipulated share of the mortgage and utility expenses at issue.

[10] In his brief, the plaintiff refers to a May 20, 2013 hearing held on the motion for contempt and the motion to modify and cites to the transcript thereof. Neither the transcript nor any other evidence of this hearing is part of the record before us, however, and we thus decline to consider the plaintiff's references to this hearing because "[a] reviewing court cannot go beyond the proper record before it in the determination of issues presented on appeal." *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 318 n.6, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010).

[11] The parties established during oral argument to this court that the trial court, *Pinkus*, *J.*, decided the plaintiff's motion for modification in January, 2014.

[12] General Statutes § 46b-82 (a) provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

[13] "Our Supreme Court has held that if alimony is not awarded in a *final dissolution decree*, it cannot be awarded in the future based on changed circumstances. . . . Alimony is solely a creature of statute, and a court has no authority to award it other than at the time of entering a dissolution decree." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Fitzsimons* v. *Fitzsimons*, 116 Conn. App. 449, 457, 975 A.2d 729 (2009).

[14] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . . If a court, after hearing, finds that a substantial change in circumstances of either party has occurred, the court shall determine what modification of alimony, if any, is appropriate, considering the criteria set forth in section 46b-82."

[15] See General Statutes § 12-407 (a) (12) (L) and (15) (A) (x).

[16] Even though the plaintiff also requested that the defendant reimburse all of his child support payments, we do not discuss this part of the plaintiff's requested relief in resolving this claim because the plaintiff does not address it specifically in challenging the modified financial orders on appeal.

[17] While we note the plaintiff's allegations of expressed financial hardship, we are not persuaded by the plaintiff's calculations of his weekly obligations under the modified financial orders as a means of demonstrating such hardship under *Greco* and its progeny. The plaintiff asserts that "the refashioned orders are overwhelmingly burdensome and represent an abuse of discretion; they are inequitable, unjust, discriminatory, and punitive against the [plaintiff]. Immediately obvious is [the plaintiff]'s obligation to pay his rent ($453), half the mortgage ($594 / 2 = $297), and alimony of $100 weekly, to say nothing of his other very basic living expenses. This $850 weekly total represents 102 [percent] of [the plaintiff's] net weekly income . . . ." (Emphasis omitted.)

The plaintiff misinterprets the financial orders, however, because the only amounts from them that are relevant to his argument are the order of $100 per week in alimony and $148 per week in child support, not relied on by the plaintiff, however, to be paid for the elder daughter from when the plaintiff vacated the marital home in May, 2010, to when the elder daughter reached the age of majority in October, 2011. See footnote 1 of this opinion.

The order with respect to payment by each of the parties of one-half of the mortgage obligation relating to the marital premises was in effect only until the sale and transfer of the marital home, a matter at least in part under the control of the parties. We already have noted that we have not received any information regarding the present status of the marital home. See footnote 4 of this opinion. Therefore, if we analyze the impact of only the alimony and child support orders—$248 per week—on the claimed

net weekly income of the plaintiff—$833—the amount of those payments consumed approximately 30 percent of the plaintiff's net weekly income. For this reason, we conclude that this matter is readily distinguishable from *Greco* and its progeny.

The modified financial orders, furthermore, appropriately do not address the plaintiff's personal rent obligations, despite the plaintiff's argument that "since [the parties] were sharing expenses under the orders of the original decree pending the sale of the house, once he vacated the home his new rental and utilities costs should be shared along with the expenses of the marital home." We conclude that the court did not abuse its discretion in omitting the plaintiff's rent obligations from its calculation of the modified financial orders, especially given that the plaintiff has not cited any authority for his argument. In *Greco* and its progeny, this court and our Supreme Court determined that financial orders were an abuse of discretion after comparing the payments required under them to the obligor's net income. In none of these cases were the obligor's claimed living expenses a factor in the court's calculation.

[18] For this reason, this matter is distinguishable from *Tow* v. *Tow*, supra, 142 Conn. App. 47–48, on which the plaintiff relies in making his claim. This court held in *Tow* that the trial court properly denied the plaintiff wife's motion for contempt alleging nonpayment of alimony and child support where, during the period of time covered by the motion, the plaintiff had access to a joint checking account into which the defendant husband deposited an amount that was "well in excess" of the defendant's court-ordered support obligations. Id., 47. In the present matter, there is no temporal overlap between the plaintiff's overpayments and his noncompliance with his court-ordered support obligations.

[19] General Statutes § 46b-8 was repealed by No. 13-213, § 6, of the 2013 Public Acts, effective October 1, 2013.

[20] We observe that the record in fact contains multiple statements by Judge Adelman acknowledging the plaintiff's credibility, his respectfulness to the court, and the merit of the plaintiff's claims.